973 So.2d 29 (2007)
Marco BURGOS and Pilar Diaz
v.
STAR AUTO SERVICE, INC., Joseph B. Margavio, II, ABC Insurance Company and XYZ Insurance Company.
No. 07-CA-229.
Court of Appeal of Louisiana, Fifth Circuit.
November 13, 2007.
William J. Wegmann, Jr., Orr Adams, Jr., Law Firm of William J. Wegmann, Metairie, LA, for Defendants/Appellants/Third-Party Plaintiffs.
Dominic J. Gianna, Alan D. Weinberger, Middleberg, Riddle & Gianna, New Orleans, LA, for Third-Party Defendant/Appellee.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS, and GREG G. GUIDRY.
MARION F. EDWARDS, Judge.
In this automobile accident case, defendants/appellants/third-party plaintiffs, Joseph B. Margavio, II and Star Auto Service, appeal from a summary judgment which ranked their general liability policy ahead of another liability policy issued by third-party defendant/appellee, Electric Insurance Company. For the reasons that follow, we affirm.
*30 On October 30, 2002, plaintiff, Marco Burgos ("Burgos"), was driving southbound on Causeway Boulevard in Jefferson Parish with passenger Pilar Diaz ("Diaz"). While stopped at the intersection of North Causeway Boulevard and West Metairie Avenue, the Burgos vehicle was rear ended by a car driven by Joseph B. Margavio, II ("Margavio"), who was acting in the course and scope of his employment at the time of the collision on behalf of Star Auto Service, Inc. ("Star Auto"). The car being test-driven by Margavio was owned by Carmen J. Tessitore ("Tessitore"), a customer of Star Auto. At the time of the collision, the Tessitore vehicle had liability coverage underwritten by Electric Insurance Company ("Electric"). Margavio, as an employee of Star Auto, was covered under a "Garagekeepers" liability policy issued by Lafayette Insurance Company ("Lafayette").
On October 29, 2003, Burgos and Pilar filed suit in the Twenty-Fourth Judicial District Court for the Parish of Jefferson against Margavio, Star Auto, ABC Insurance Company as Margavio's liability insurance carrier, and XYZ Insurance Company as the liability insurance carrier for Star Auto.
On January 20, 2005, Star Auto and Margavio filed a Third-Party Demand against Electric. On May 12, 2006, Electric filed a Motion for Summary Judgment in which it argued that its policy on the Tessitore vehicle provides for a business use exclusion under which it could properly deny a defense and indemnity to Star Auto and Margavio.
On April 15, 2005, Star Auto and Margavio filed their own Motion for Summary Judgment in which they asserted that the automobile liability policy of Electric is primary.
The trial court heard the cross-motions for summary judgment on August 9, 2006. On August 25, 2006, the trial court granted Electric's Motion for Summary Judgment and denied Star Auto and Margavio's cross motion for summary judgment. The judgment of the court was declared final on October 30, 2006, and Star Auto and Margavio timely filed the present appeal.

LAW AND ARGUMENT
On appeal, Star Auto and Margavio raise six assignments of error:
1) The trial court erred in ranking the commercial general policy (CGL) of Lafayette Insurance as primary on the vehicle and its driver, ranked ahead of the automobile liability insurance on the vehicle provided by Electric Insurance Company. The automobile liability insurance policy on the vehicle of Electric Insurance Company should have been ranked as primary, ahead of the Lafayette CGL policy.
2) The trial court erred in granting Electric Insurance's motion for summary judgment.
3) The trial court erred in not enforcing against Electric Insurance Company, the statutory, minimum liability coverage that applied to the vehicle involved in the accident.
4) The trial court erred by not requiring Electric to defend and indemnify its insureds, Mr. Margavio and his employer, Star Auto Service.
5) The trial court erred in enforcing Electric's business use exclusion to circumvent coverage for the minimum, statutory liability limits of $10, 000/$20,000 for the vehicle and its driver for the benefit of the plaintiffs, contrary to the legislative public policy of this State.
6) Alternatively, as the primary carrier on the vehicle, the Electric policy *31 should be interpreted to provide its stated, full liability limits of $100,000/$300,000.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.[1] An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law.[2] The appellate court must consider whether the summary judgment is appropriate under the circumstances of the case.[3] There must be a "genuine" or "triable" issue on which reasonable persons could disagree.[4] Under the amended version of LSA-C.C.P. art. 966, the burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." A material fact is one that would matter on the trial of the merits.[5]
The resolution of all of appellants' assignments depends upon our interpretation of whether, under the facts of the case, Electric's business use exclusion conflicts with the statutory provision and the public policy of the minimum requirements of Louisiana's Motor Vehicle Safety Responsibility Law, LSA-R.S, 32:900.
The liability policy issued by Electric to Tessitore was for the policy period of July 13, 2002 through July 13, 2003. Section A.6 of Part ALiability Coverage, in relevant part, reads:
A. We do not provide Liability Coverage for any "insured":
. . . .
6. While employed or otherwise engaged in the "business" of:
. . . .
b. Repairing;
c. Servicing;
. . . .
vehicles designed for use mainly on public highways. . . . This includes road testing and delivery. This exclusion (A.6) does not apply to the ownership, maintenance or use of "your covered auto" by:
a. You[.]
. . . .
For the purposes of the policy, part B of the insuring agreement provides:
B. "Insured" as used in this Part means:
. . . .
2. Any person using "your covered auto".
In the case of McCrossen v. Star Auto Service, Inc.,[6] this Court considered the issue of whether a liability policy issued by State Farm which contained a business use exclusion that stated there was no coverage while any insured vehicle is "being repaired, serviced or used by any person *32 employed or engaged in any way in a car business" was enforceable. We found that such an exclusion was not, in fact, enforceable.
After our opinion in McCrossen, supra, the Louisiana Supreme Court decided the case of Marcus v. Hanover Ins. Co., Inc.[7] In Marcus, the court opined:
In this case, we likewise conclude the business use exclusion that excludes from coverage the named insured while operating his insured car in "any business other than an auto business," contravenes the purpose of the Louisiana Motor Vehicle Safety Responsibility Law and La. R.S. 22:655(D), which is to provide compensation for persons injured by the operation of an insured vehicle. If the exclusion were upheld, a named insured driving his personal, insured vehicle in his own or someone else's business would be denied coverage. This result would undermine the intent and purpose of the statutory scheme enacted to ensure that all Louisiana motorists have available to them automobile liability insurance coverage. The statutory scheme is intended to attach financial protection to the vehicle regardless of the purpose for which the vehicle is being operated. Similarly, the goal of all liability policies, which is to benefit injured persons and to give protection and coverage to all insureds, cannot be realized if the instant exclusion is allowed to be enforced. . . . Because the purpose of automobile liability coverage is the protection of the injured person and the coverage and protection of the insured and the business use exclusion at issue contravenes this purpose, the exclusion is invalid and unenforceable.
In Wakefield v. Reliance Nat'l Indemn. Co.,[8] decided in 2003, this Court once again visited the issue of the business use exclusion in an automobile insurance policy in light of the supreme court's holding in Marcus, supra. In concluding that the trial court properly upheld the business use exclusion at issue, we reasoned:
Fidelity argues that the "business pursuits" exclusion in the umbrella policy has been found unenforceable, citing Marcus v. Hanover Ins. Co., 98-2040 (La.6/4/99), 740 So.2d 603, Fidelity argues that the business pursuits exclusion operates to cause the vehicle to drive in and out of coverage depending on the particular mission on which the driver is engaged. The Marcus court, however, found the business use exclusion to be contrary to the public policy stated in LSA-R.S. 32:851, et seq, when it excluded from coverage the named insured while operating his personal car. The Supreme Court noted that the statutory scheme was intended to attach financial protection to the vehicle rather than to the operator. In the instant case, Walkowski was not operating her personal car, insured under the two Liberty Mutual policies, on a business outing; she was operating her employer-owned vehicle on a business outing and was at all times covered under the Reliance liability policy. The particular public policy considerations that the Marcus court faced are not present here. The trial court did not err in distinguishing this case from Marcus and, therefore, declining to invalidate the business pursuits exclusion in the Liberty Mutual umbrella policy.
(Emphasis as found in the original; footnote omitted.)
In the present case, the trial court made the following findings:

*33 Based on Tessitore's business use exclusion in the EIC policy, the garage coverage expressly provided by Lafayette, and the fact that the personal auto insurer is not enforcing the business use exclusion against the named insured, the court finds as a matter of law that the Lafayette policy is primary to the EIC policy.
The court finds that Marcus, supra, is limited to its facts, that is to say, to cases in which the relevant carrier was invoking the business use exclusion against the named insured with regard to the operation of the owned vehicle. As EIC is not asserting the business use exclusion against its named insured with regard to the operation of owned [sic] vehicle, the court finds that the rationale of Marcus is inapplicable and that the Fifth Circuit's enforcement of the business use exclusion as in Wakefield applies.
. . . Additionally, the third-party plaintiffs are more than adequately insured with $500,000 coverage by a solvent company which has specifically underwritten the test-drive risk.
After a review of the record in this, case and the underlying liability policies at issue, we cannot say that the trial court erred in its finding that the Lafayette liability policy was primary over the Electric policy. The trial court further did not err in distinguishing this case from Marcus and, therefore, declining to invalidate the business pursuits exclusion in the Electric policy. Accordingly, for the foregoing reasons, and pursuant to our reasoning in Wakefield, supra, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Bua v. Dressel, 96-79 (La.App. 5 Cir. 5/28/96), 675 So.2d 1191, writ denied, 96-1598 (La.9/27/96), 679 So.2d 1348 (citing Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180).
[2] Tassin v. City of Westwego, 95-307 (La.App. 5 Cir. 12/13/95), 665 So.2d 1272.
[3] Rowley v. Loupe, 96-918 (La.App. 5 Cir. 4/9/97), 694 So.2d 1006.
[4] Id. at 1008.
[5] J.W. Rombach, Inc. v. Parish of Jefferson, 95-829 (La.App. 5 Cir. 2/14/96), 670 So.2d 1305.
[6] 628 So.2d 1350 (La.App. 5 Cir.1993).
[7] 1998-2040 (La.6/4/99), 740 So.2d 603, 608.
[8] 02-1173 (La.App. 5 Cir. 4/29/03), 845 So.2d 1238, 1244.