WEIMER, Justice.
| ,This court granted a writ application filed by a defendant insurer to determine whether coverage must be provided under a motor vehicle insurance policy that purports to exclude coverage for a driver who is engaged in the “automobile business.” We find that the “automobile business” exclusion in the insurance policy violates Louisiana’s public policy of requiring insurance coverage as expressed in the Louisiana Motor Vehicle Safety Responsibility Law, LSA-R.S. 32:851 to 1043. Most specifically, LSA-R.S. 32:900(B)(2) requires coverage for permissive drivers. The “automobile business” exclusion impermissibly conflicts with LSA-R.S. 32:900(B)(2). Therefore, the district court’s dismissal from this lawsuit of an insurer invoking the “automobile business” exclusion is reversed. Though our reasoning significantly differs from the court of appeal, inasmuch as the court of appeal ruled that the automobile business exclusion did not justify dismissing the insurer, the judgment of the court of appeal is affirmed.
*443 | .FACTUAL AND PROCEDURAL BACKGROUND
The question of insurance coverage arises from the following events. On November 14, 2006, Laurie Ann Sensebe was driving on the 1-10 “twin span” bridge in St. Tammany Parish when her vehicle was rear-ended by a pickup truck owned by Gregory Hyneman and operated by Deborah Boudreaux.
At the time of the accident, Ms. Bou-dreaux was an employee of Top Hatch, Inc. (“Top Hatch”). Ms. Boudreaux was driving the pickup truck from Dub Herring Ford, Inc., the dealership where Mr. Hyneman had purchased the vehicle several months earlier. The dealership had contracted with Top Hatch to replace the seat covers with leather at Top Hatch’s shop. Ms. Boudreaux was transporting the vehicle to Top Hatch so that the work could be done on the seats.
Ms. Sensebe has filed the instant lawsuit seeking damages for personal injuries and property damages she allegedly suffered from the accident. In her petition, Ms. Sensebe names as a defendant Mississippi Farm Bureau Casualty Insurance Co. (“Farm Bureau”), which insured Mr. Hyneman’s pickup truck. Ms. Sensebe also names as a defendant Canal Indemnity Co. (“Canal Indemnity”), which insured Top Hatch.
Farm Bureau moved for summary judgment, urging that the Farm Bureau insurance policy provides no coverage and, therefore, Farm Bureau should be dismissed from the lawsuit. Farm Bureau explained that the insurance policy Mr. Hyneman purchased has an “automobile business” exclusion, and Farm Bureau argued that this exclusion applied because Ms. Boudreaux was driving the Hyneman vehicle while employed by Top Hatch. “[Ejmploying the general rules of interpretation of contracts set forth in the Louisiana Civil Code,” argued Farm Bureau, the automobile business exclusion unambiguously reflected the insurer’s and | Sinsured’s intent to exclude a driver such as Ms. Boudreaux from coverage.[1] Farm Bureau also cited examples from Louisiana’s jurisprudence when courts have indeed enforced automobile business exclusions.
Acknowledging that much of the jurisprudence upon which Farm Bureau relied pre-dated Louisiana’s Compulsory Motor Vehicle Liability Security law enacted in 1977,[2] Farm Bureau noted the possibility that the automobile business exclusion may violate the current public policy of this state. Therefore, in its motion, Farm Bureau advanced an alternative argument: “if the Farm Bureau automobile business exclusion is found to be contrary to public policy, Farm Bureau’s coverage is limited to the statutory minimum limits of coverage of $10,000.00/$20,000.00.” The limits of coverage stated in Farm Bureau’s policy are $100,000 per person and $800,000 per accident.
*444 Both the plaintiff, Ms. Sensebe, and Farm Bureau’s co-defendant, Canal Indemnity, opposed Farm Bureau’s motion for summary judgment. Taking the lead in opposing Farm Bureau, Canal Indemnity argued that Top Hatch was not the type of business contemplated by the automobile business exclusion. Canal Indemnity urged that Top Hatch’s upholstery work, such as replacing the seat covers in the pickup truck with leather, did not render Top Hatch a “repair shop” as defined in Farm Bureau’s automobile business exclusion. Canal Indemnity also argued that the 14automobile business exclusion did — as Farm Bureau alluded it might — violate Louisiana’s public policy of covering permissive drivers.
Canal Indemnity and Top Hatch together brought their own motion for summary judgment, urging that Farm Bureau’s policy provides primary coverage and, consequently, Canal Indemnity’s policy should only provide coverage after the Farm Bureau policy limits of $100,000.00 are exhausted.
The district court heard argument on the two motions for summary judgment and ruled from the bench. Granting Farm Bureau’s motion, the court explained:
the automobile business exclusion of Farm Bureau’s policy is clearly applicable and does not apply to the named insure[d].
Top Hatch is an automobile business, and Ms. Boudreaux was operating Hyneman’s vehicle while in the course and scope of her employment when the accident had occurred. Under these facts the exclusion is not against public policy when applied to dispute coverage in favor of the third party, Ms. Bou-dreaux, who is covered by another policy of insurance, specifically the policy issued by Canal Indemnity.
The court denied Canal Indemnity’s and Top Hatch’s motion for summary judgment, explaining:
The Court’s finding that the Farm Bureau policy excludes coverage and is therefore not collectible results in the Canal policy providing primary coverage for the negligence of Ms. Boudreaux. The motions for summary judgment filed by Canal [are] therefore denied.
The district court’s rulings were formalized in a written judgment, which was certified to be a final judgment pursuant to LSA-C.C.P. art. 1915(B). Canal Indemnity and Top Hatch moved for a devolutive appeal, which the district court granted and designated the summary judgment in favor of Farm Bureau as a final, appeal-able judgment.[3]
|sThe court of appeal reversed the district court, finding Farm Bureau had failed to carry its burden of proving that the automobile business exclusion applied. Sensebe v. Canal Indem. Co., 2009-1325, p. 7 (La.App. 1 Cir. 2/24/10), 35 So.3d 1122, 1126. The court explained that according to a strict construction of the exclusionary terms, “the installation of leather upholstery is an after-market upgrade and not an automobile repair or service as reasonably contemplated by these terms.” Sensebe, 2009-1325 at 7, 35 So.3d at 1126. The court of appeal did not reach the question of whether the exclusion should be struck as violating Louisiana’s public policy because the court instead found that the exclusion did not apply as a matter of *445 contractual interpretation. Sensebe, 2009-1325 at 7, 35 So.3d at 1126.
Farm Bureau applied for a writ of review, which this court granted. Sensebe v. Canal Indem. Co., 2010-0703 (La.6/25/10), 38 So.3d 358.
LAW AND ANALYSIS
Appellate courts review summary judgments de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). A court must grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” LSA-C.C.P. art. 966(B). The summary judgment procedure, which is designed to secure the just, speedy, and inexpensive determination of civil actions, is now favored in our law. LSA-C.C.P. art. 966(A)(2). The summary judgment procedure is also an appropriate procedure for determining certain insurance coverage issues. See, e.g., Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024.
|fiIn this case, Farm Bureau moved for summary judgment and advanced two arguments: 1) the policy issued to Mr. Hyneman afforded no coverage at all because under the wording of the automobile business exclusion, Ms. Boudreaux was not insured when driving to her employer, Top Hatch; and 2) at most, and if the automobile business exclusion were found to violate the public policy of this state, liability coverage should be limited to the statutory minimum of $10,000/20,000.[4]
In order to analyze the merits of these arguments, the relevant language from the insurance policy must be examined. Under the “DEFINITION OF INSURED,” the policy states, in pertinent part:
The insurance with respect to any person or. organization other than the named Insured or spouse does not apply:
(1) to any person or organization, or to any agent or employee thereof, operating an automobile business, with respect to any accident arising out of the operation thereof....
Then, under the “OTHER DEFINITIONS” heading, the policy states, in pertinent part:
(2) Automobile Business means an automobile sales agency, repair shop, service station, storage garage or public parking place.
The starting point in analyzing insurance policies is the principle that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. LeBlanc v. Aysenne, 2005-0297, p. 3 (La.1/19/06), 921 So.2d 85, 89; Edwards v. Daugherty, 2003-2103 & 2104, p. 11 (La.10/1/04), 883 So.2d 932, 940; Cadwallader v. Allstate Insurance Co., 2002-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580; Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co., 1993-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. *446 Though there are numerous well-settled interpretive principles specific to insurance policies, for present purposes, one is especially pertinent: “When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent and courts must enforce the contract as written.” Sims v. Mulhearn Funeral Home, Inc., 2007-0054, p. 8 (La.5/22/07), 956 So.2d 583, 589, citing LSA-C.C. art. 2046.
In the record before us, Top Hatch indicated in a discovery response that it “installs leather interiors and performs repairs to sunroofs.” While it might be said that Top Hatch’s business involves both installation and repairs-undeniably, engaging in repairs is part of its business. The driver from such a business fits within the contractually excluded category of “repair shop” drivers. In determining the applicability of automobile business exclusions, we find it was error for the appellate court to myopically focus on the fact that the vehicle was being driven in anticipation of installing the seats instead of focusing on the fact that the business itself was engaged in repairs. The conditions for the exclusion have therefore been met, and from a purely contractual standpoint, the exclusion would be given effect. See Sims, 2007-0054 at 8-9, 956 So.2d at 589 (“Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy’s provisions are couched in unambiguous terms.”).
This case, however, calls upon us not only to contractually interpret the automobile business exclusion, but also to evaluate the effect of the exclusion based on relevant statutory provisions which recite the public policy of Louisiana. As we | shave previously observed: “exclusions contained within the policy that conflict with statutes or public policy will not be enforced.” Marcus v. Hanover Ins. Co., 98-2040, p. 4 (La.6/4/99), 740 So.2d 603, 606.
The court’s search for the public policy governing automobile insurance policies, therefore, must begin with the statutes enacted by the legislature. We have previously found: “The Louisiana Motor Vehicle Safety Responsibility Law, LSA-R.S. 32:851 through LSA-R.S. 32:1043, sets forth a mandatory, comprehensive scheme to provide financial protection to those involved in motor vehicle accidents.” Hawkins v. Redmon, 2009-2418, p. 4 (La.7/6/10), 42 So.3d 360, 362. This protective statutory scheme not only mandates that owners of motor vehicles obtain insurance coverage, but these comprehensive statutes also mandate many of the contractual terms of insurance policies. Hawkins, 2009-2418 at 5, 42 So.3d at 363. For example, there is a statutory requirement for insurance policies to provide minimal dollar amounts of coverage for accidents. Id., citing LSA-R.S. 32:861.
Importantly, there is also a statutory requirement for insurance policies to designate what drivers are covered. LSA-R.S. 32:900(B)(2) provides:
B. Such owner’s policy of liability insurance:
[[Image here]]
(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles....
In applying LSA-R.S. 32:900(B)(2) to the facts of this case, we begin as we must with the words of the statute itself.
*447 The starting point in the interpretation of any statute is the language of the statute itself. Words and phrases shall be read in context and shall be construed according to the common and approved usage of the | slanguage. LSA-R.S. 1:3. The meaning and intent of a law is determined by considering the law in its entirety and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law.
Hawkins, 2009-2418 at 9, 42 So.3d at 365.
Under the plain language of LSA-R.S. 32:900(B)(2), there is a mechanism for motor vehicle liability policies to cover not only the insured specifically named in the policy, but also to cover any other driver who drives with the permission of the named insured. From the legislature’s choice of the word “shall” in LSA-R.S. 32:900(B)(2), we are bound to conclude that the mechanism for coverage of permissive drivers is not optional, but mandatory. See Borel v. Young, 2007-0419 (La.11/27/07), 989 So.2d 42, quoting BlacK’s Law Dictionary, 1375 (6th ed.1990)[5] and citing Pittman Construction Co. v. Housing Authority of Opelousas, 167 F.Supp. 517, 523 n. 38 (W.D.La.1958), aff'd, 264 F.2d 695 (5th Cir.1959) (“The word ‘shall’ is ordinarily imperative, of similar effect and import with the word ‘must,’ and inconsistent with the idea of discretion.”).
The language within an insurance policy which fulfills the requirement of LSA-R.S. 32:900(B)(2) is “commonly known as the statutory omnibus clause.” Simms v. Butler, 1997-0416, p. 3 (La.12/2/97), 702 So.2d 686, 688. The requirement for omnibus coverage for drivers who use the insured’s vehicle with permission is so crucial to Louisiana’s public policy that “La. R.S. 32:900(B)(2) is incorporated into |10every policy of insurance to which it is applicable, as if it were written in the policy itself.” Id.
Farm Bureau’s insurance policy has an omnibus clause,[6] but the automobile business exclusion quoted earlier — if given effect — would negate the liability coverage afforded under the omnibus clause. Therefore, the automobile business exclusion and the omnibus insured coverage required by LSA-R.S. 32:900(B)(2) are in direct conflict. Faced with this conflict, this court must choose to enforce the statute by striking down the conflicting exclusion. See Marcus, 98-2040 at 4, 740 So.2d at 606 (“Any policy provision that narrows or restricts statutorily-mandated coverage will not be enforced.”).
In Marcus, we struck down a more general “business use exclusion” and noted that the “automobile business exclusion [is] another use exclusion similar to” the general “business use exclusion.” Marcus, 98-2040 at 5, 740 So.2d at 607. We cited court of appeal decisions from the First, Third, Fourth, and Fifth Circuits holding *448 that the automobile business exclusion “violates public policy because it conflicts with the so-called ‘omnibus clause.’ ” We explained that “[t]hese courts found that because the exclusion conflicted with the statutory provisions mandating compulsory insurance for all drivers who use the insured’s vehicle with his permission, the exclusion was unenforceable.” Marcus, 98-2040 at 6, 740 So.2d at 607, citing McCrossen v. Star Auto Service, Inc., 628 So.2d 1350 (La.App. 5 Cir.1993); Arnaud v. Commercial Union Ins. Co., 594 So.2d 992 (La.App. 3 Cir. 1992); Louisiana Farm Bureau Cas. Ins. Co. v. Darjean, 554 So.2d 1376 (La.App. 1 Cir.1989); and Rudison v. Richard, 526 So.2d 369 (La. App. 4 Cir.1988).
After Marcus, and against the great weight of these authorities we favorably cited therein, the Fifth Circuit recently enforced an exclusion similar to the automobile business exclusion here. In Burgos v. Star Auto Service, Inc., 07-229 (La.App. 5 Cir. 11/13/07), 973 So.2d 29, plaintiffs car was rear-ended by a vehicle driven by Joseph Margavio, who was employed by Star Auto, which had been hired to repair the vehicle. Mr. Margavio was test-driving the vehicle owned by Carmen Tessitore. At the time, Ms. Tessitore had liability insurance issued by Electric Insurance Company, and Star Auto had a “garagekeepers” liability policy issued by Lafayette Insurance Company. The Electric Insurance Company insurance policy on Ms. Tessitore’s vehicle contained an exclusion for “road testing and delivery.” Burgos, 07-229 at 5, 973 So.2d at 31.
Noting that in Marcus a general business exclusion was sought to be enforced against the named insured when driving his own vehicle while at work, the Burgos court found “Marcus ... is limited to its facts, that is to say, to cases in which the relevant carrier was invoking the business use exclusion against the named insured with regard to the operation of the owned vehicle.”[7] Burgos, 07-229 at 7, 973 So.2d at 33. Because Electric Insurance Company was not attempting to enforce an exclusion against the vehicle’s operation by Ms. Tessitore, the named insured, the 112Burgos court reasoned that Electric Insurance Company’s “road testing and delivery” exclusion must be enforced. See Burgos, supra.
Here, Farm Bureau relies on Bur-gos to support Farm Bureau’s argument that the automobile business exclusion should be upheld. In its motion for summary judgment, Farm Bureau seeks to enforce the exclusion not for the named insured’s operation of the vehicle, but for Ms. Boudreaux’s permissive operation of the vehicle on behalf of Top Hatch.[8] Ac *449 cording to Farm Bureau’s argument, Bur-gos stands for the proposition that only the situation in Marcus, i.e., when the insurer seeks to enforce an exclusion against the named insured, can public policy be violated.
113Farm Bureau’s argument is misplaced. While it is true that an insurer may violate public policy by taking a position contrary to the interests of the insured after a claim has been made,[9] the public policy we must observe here lies at the origin of the insurance relationship, i.e., -within the insurance policy itself. As we have noted above and in Marcus, LSA-R.S 32:900(B)(2) requires that insurance policies provide coverage for permissive drivers. To the extent Bur-gos upheld an automobile business exclusion in a liability policy with omnibus coverage mandated by LSA-R.S 32:900(B)(2), but the court did not observe the requirement of providing coverage for a permissive driver, Burgos is hereby overruled.
In Marcus, and here, we have seen practical effects stemming from an insurance policy exclusion that violate the requirement for omnibus coverage. For example, in Marcus we noted that if a general “business exclusion” were enforced, then “motorists would be allowed to drive in and out of coverage, depending on the purpose of a particular excursion, which would wreak havoc on the legislature’s goal in enacting an orderly and comprehensive scheme designed for the protection of injured victims of careless drivers.” Marcus, 98-2040 at 8, 740 So.2d at 608. Here, if the automobile business exclusion were found enforceable, the exclusion would eliminate coverage irrespective of whether the repair shop had coverage. Such a result is contrary to the public policy the legislature has described in the direct action statute, LSA-R.S. 22:1269(D): “all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to *450 whom the insured is liable; and ... it is the purpose of all liability policies to give | protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause[.]”[10]
The automobile business exclusion, commentators have noted, “can rather easily conflict with the omnibus clause; any provision which is in derogation of that clause should be construed narrowly as a matter of public policy.” Lee R. Russ & Thomas F. Segalla, 8a Couch on InsüRance 3d, § 120:78 (2005). In our public policy analysis, we find that Farm Bureau’s automobile business exclusion conflicts with LSA-R.S. 32:900(B)(2), as these commentators predicted it “rather easily” could.
We also note the commentators’ predicted result within numerous other jurisdictions, as the following courts have found automobile business exclusions of various formulations to conflict with public policy: Universal Underwriters Ins. Co. v. American Motorists Ins. Co., 541 F.Supp. 755 (D.C.Miss., 1982) (Erie doctrine analysis applying Mississippi law); Universal Underwriters Ins. Co. v. Dairyland Mut. Ins. Co., 5 Ariz.App. 174, 424 P.2d 465 (1967), vacated on other grounds, 102 Ariz. 518, 433 P.2d 966 (1967), overruled on other grounds by Hartford Accident & Indem. Co. v. Aetna Casualty & Sur. Co., 164 Ariz. 286, 792 P.2d 749 (1990) (“Universal is overruled to the extent it rejects equitable subrogation.”); Exchange Cas. & Sur. Co. v. Scott, 56 Cal.2d 613, 15 Cal.Rptr. 897, 364 P.2d 833 (1961); Universal Underwriters Ins. Co. v. Travelers Ins. Co., 669 A.2d 45 (Del.1995);[11] State Farm Mut. Auto. Ins. Co. v. Smith, 197 Ill.2d 369, 259 Ill.Dec. 18, 757 N.E.2d 881 (2001); DeWitt v. Young, 229 Kan. 474, 625 P.2d 478 (1981); Distler v. Reuther Jeep Eagle, 14 S.W.3d 179 (Mo.App. E.D. 2000); Nationwide Mut. Ins. Co. v. Aetna Life & Cas. Co., 283 N.C. 87, 194 S.E.2d 834 (1973); Tapp v. Perciful, 120 P.3d 480 (Okla.2005); American Mut. Fire Ins. Co. v. Aetna Casualty & Surety Co., 303 S.C. 301, 400 S.E.2d 147 (1991). Appearing to represent a minority view, the following courts have upheld automobile business exclusions as not violating public policy: Colonial Penn Ins. Co. v. Castillo, 362 So.2d 88 (Fla.App.1978); United Services Auto. Ass’n v. Reilly, 122 Or.App. 459, 858 P.2d 457 (1993); Murray v. Remuck, 108 R.I. 179, 273 A.2d 491 (1971); Lumbermens Mut. Casualty Co. v. Indemnity Ins. Co. of North America, 186 Va. 204, 42 S.E.2d 298 (1947); Gulmire v. St. Paul Fire and Marine Ins. Co., 269 Wis.2d 501, 674 N.W.2d 629 (Wis.App.2003), writ denied, 271 Wis.2d 111, 679 N.W.2d 546 (2004).
In our review of statutory public policy considerations, we also see that the legislature has deemed it advisable within LSA-R.S. 32:900 to allow certain exceptions to omnibus coverage. “An owner may ex- *451 elude a named person as an insured under a commercial policy if the owner obtains and maintains in force another policy of motor vehicle insurance which provides coverage for the person so excluded.” LSA-R.S. 32:900(B)(2)(d). Also, the legislature has allowed insurance policies to “exclude from coverage the named insured and the spouse of the named insured. The insurer and an insured may also exclude from coverage any other named person who is a resident of the same household as the named insured.” LSA-R.S. 32:900(L)(1).
11(¡Because the legislature has listed these specific exclusions, “the time honored maxim, expressio unius et exclusio alterius ... teaches us that when the legislature specifically enumerates a series of things, the legislature’s omission of other items, which could have been easily included in the statute, is deemed intentional.” Theriot v. Midland Risk Ins. Co., 1995-2895, p. 4 (La.5/20/97), 694 So.2d 184, 187. The expressio -unius maxim instructs us here that since an automobile business exclusion is not one of the legislature’s enumerated exceptions to LSA-R.S. 32:900, Farm Bureau’s automobile business exclusion is not allowed.
As a final consideration, we note that “an automobile business” exclusion is a species of “[bjusiness use-related exclusions” which “may be phrased in any number of ways.” Russ & Segalla, 8a Couoh on Insurance 3d, § 120:22. Having concluded in Marcus that the general business exclusion is offensive to this state’s public policy, logic counsels the court here, that because the automobile business exclusion is a subset of what we have already found offensive to public policy, that Farm Bureau’s automobile business exclusion cannot be enforced.
Having concluded that the automobile business exclusion cannot be enforced, we return to the procedural context in which this matter arose. In its motion for summary judgment, Farm Bureau urged that “if the Farm Bureau automobile business exclusion is found to be contrary to public policy, Farm Bureau’s coverage is limited to the statutory minimum limits of coverage of $10,000.00/$20,000.00.” The district court did not reach the issue of whether coverage should be reduced to the statutory minimum, because the court granted Farm Bureau its preferred relief of enforcing the automobile business exclusion and dismissing Farm Bureau from the lawsuit. The court of appeal did not reach the limits of coverage issue because when that court reversed the district court’s ruling, the court of appeal did not find Farm Bureau’s 117exclusion unenforceable on public policy grounds, but on contractual grounds. Though Canal Indemnity and Top Hatch, in their brief to this court, urge that “coverage afforded by the Farm Bureau policy should be the stated policy limits of $100,000,” Canal Indemnity and Top Hatch did not seek a writ to this court on the limits of coverage issue. Farm Bureau did not raise the issue of the limits of coverage in its writ application to this court, and Farm Bureau has not briefed the issue. We do not, therefore, reach the limits of coverage issue. See, e.g., Agilus Health (Taylor) v. Accor Lodging North America, 2010-0800, p. 6 n. 4, 52 So.3d 68 (La.11/30/10) (“because this issue was not raised in connection to this writ application, we will not reach it in this opinion.”).
CONCLUSION
Because the insurance policy at issue contains an exclusion for a driver engaged in an automobile business, but that exclusion conflicts with the legislated public policy of affording coverage to permissive drivers, the automobile business exclusion cannot be enforced in this matter. The *452 judgment of the district court granting Farm Bureau’s motion for summary judgment and dismissing Farm Bureau from this lawsuit is therefore reversed. To the extent the court of appeal found the automobile business exclusion unenforceable, the decision of the court of appeal is hereby affirmed. This matter is remanded to the district court for further proceedings consistent with this opinion.
AFFIRMED AND REMANDED.
JOHNSON, Justice, concurs.
GUIDRY, Justice, concurs in part, dissents in part, and assigns reasons.

. In this court’s review of the record, we observe that Farm Bureau’s insurance policy was issued to Mr. Hyneman at a Mississippi address. In the relevant pleadings, and in the decisions of the courts below, nowhere do we discern that choice of law issues have ever been raised. The court has previously ruled that where, as here, an accident occurs in Louisiana involving a Louisiana resident and the applicable insurance policy was issued outside of Louisiana, a choice of law analysis is appropriate. See Champagne v. Ward, 2003-3211, p. 22 (La.1/19/05), 893 So.2d 773, 786. Here, given that Farm Bureau has argued for application of Louisiana law in its motion for summary judgment, we find that Farm Bureau concedes that the application of Louisiana law is proper.

. See 1977 La. Acts, No. 115, § 1, effective July 1, 1978.

. The district court also designated as a final judgment the denial of the summary judgment sought by Canal Indemnity and Top Hatch on the issue of whether Canal Indemnity's policy should provide secondary coverage after exhausting Farm Bureau's coverage. That issue, however, has not been presented to this court.

. The minimal limits of liability coverage are stated in LSA-R.S. 32:900(B)(2)(a) and (b). The legislature has recently raised the minimal limits (see 2008 La. Acts, No. 921, § 1, effective January 1, 2010), but during the relevant time here, the limits were: "(a) Ten thousand dollars because of bodily injury to or death of one person in any one accident, and, (b) Subject to said limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident....”

. The court in Borel, 2007-0419 at 10, 989 So.2d at 58, stated:
Shall. As used in statutes, contracts, or the like, this word is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation. The word in ordinary usage means ‘must’ and is inconsistent with a concept of discretion.

. The insurance policy states: “the unqualified word Insured means the named Insured and, if the named Insured is an individual, his spouse, and also any person while using the Automobile and any person or organization legally responsible for its use, provided the actual use of the Automobile is by the named Insured or spouse or with permission of either.”

. Indeed, in Marcus, the plaintiffs were injured by a driver, who "was operating his personal vehicle in the course and scope of his employment with J & J Mechanical, Inc.” Marcus, 98-2040 at 2, 740 So.2d at 604. The driver's insurer sought to enforce an exclusion for operating the vehicle "in any business other than an auto business” against the driver. Id. And, as Farm Bureau here correctly notes, this court ruled in Marcus that "the business use exclusion that excludes from coverage the named insured while operating his insured car in 'any business other than an auto business,' contravenes” Louisiana’s public policy. Marcus, 98-2040 at 7, 740 So.2d at 608.

. In the record of this summary judgment case, we note that actual evidence of permissive use of Mr. Hyneman's vehicle is scant. Permission is easily inferred, however, under the broad construction of the law regarding permission:
In the seminal case of Parks v. Hall, 189 La. 849, 181 So. 191 (1938), this court addressed what constitutes permission in an omnibus clause and adopted the "initial permission” rule. Under this rule, once consent, express or implied, is granted by the insured to use *449 the vehicle, any subsequent changes in the character or scope of the use do not require additional specific consent of the insured. Norton v. Lewis, 623 So.2d 874, 875 (La.1993). Thereafter, "coverage will be precluded only where the deviation from the use consented to amounts to theft or other conduct displaying an utter disregard for the return or safekeeping of the vehicle." Id. ... Manzella v. Doe, 94-2854 (La. 12/8/95), 664 So.2d 398, 402. Permission extends to subsequent users if it was reasonably foreseeable that the first permitted would allow others to operate the vehicle. See American Home Assur. Co. v. Czarniecki, 255 La. 251, 262, 230 So.2d 253, 257 (1970).
Here, Mr. Hyneman purchased his vehicle several months before Ms. Boudreaux picked it up from Dub Herring Ford. Dub Herring Ford contracted with Ms. Boudreaux's employer, Top Hatch, to replace the seat covers in Mr. Hyneman's vehicle with leather. Ms. Boudreaux testified that she had picked up vehicles numerous times before from Dub Herring Ford and that dealership knew her as a Top Hatch employee. Ms. Boudreaux stated that in this instance as in prior instances, Dub Herring Ford entrusted her with taking a vehicle to her employer, Top Hatch.
Additionally, because Farm Bureau acknowledged there is a question of whether its automobile business exclusion may have violated Louisiana’s public policy of providing coverage for permissive drivers, the court is satisfied that the predicate condition of permission has been met. See, e.g., Stanfel v. Shelton, 563 So.2d 410, 413 n. 4 (La.App. 1 Cir.1990):
[Although there are no allegations or evidence in the record regarding permission or the scope of any permission, [the insurer] has never raised as an issue that [the driver] did not have permission or that he was not within the scope of that permission. Rather, [the insurer] has contended that its policy does not apply because the automobile was used in the course of employment; therefore, the issue of permission is not before us as a contested matter.

. See, e.g., LSA-R.S. 22:1973(B) (describing bad faith settlement practices).

. This same public policy, when we cited it in Marcus, was at the time designated as LSA-R.S. 22:655(D). The enumeration of certain insurance statutes, including the direct action statute, has changed since we decided Marcus. The public policy concerns, however, have not changed.

. Universal Underwriters is actually couched with language indicating "^at an automobile business exclusion did not violate public policy. See Universal Underwriters Ins. Co., 669 A.2d at 48. But the court adjudged the exclusion in two ways: 1) the court found the insurer “concedes its obligation as the insurer of the ... vehicle owners, [is] to provide coverage up to the statutory minimum” notwithstanding the exclusion; and 2) for liability over the statutorily-required minimum limit, the court concluded the exclusion would be given effect. Id. Because of the first aspect, i.e., the court's resolution of a conflict between an automobile business exclusion and statutorily-required insurance, Universal Underwriters is included in this listing.