SEXTON, Judge Pro Tem.
| T This case arises out of a tragic multi-vehicle, multi-collision wreck on 1-20 on November 7, 2007. Multiple lawsuits were filed and consolidated. The only matter before this court on appeal is the granting of summary judgment in favor of the State of Louisiana, Department of Transportation and Development (“DOTD”), and dismissing it from the suits. Plaintiffs Morales and Meshell appeal. For the reasons stated herein, we affirm.

FACTS

On November 7, 2007, DOTD was engaged in a mobile maintenance operation on the inside shoulder of westbound 1-20 in Madison Parish. A motor grader, driven by DOTD employee Glen Jones, was *462 scraping vegetation and dirt build-up from the inside shoulder of the Interstate. An attenuator truck, driven by DOTD employee Jose Saldana, was shadowing the motor grader. The attenuator truck was equipped with a working arrow board directing traffic away from the motor grader and into the right (or outside) lane of travel. The shadow vehicle was also equipped with revolving strobe lights, which were activated and working properly, and a large sign which read “CAUTION-SLOW MOVING VEHICLE AHEAD.” The record confirms that the stretch of Interstate where the work was being done is straight and level, with no curves or sight obstructions of any kind.
The two vehicles were traveling slowly down the inside shoulder of the Interstate, partially in the inside/fast lane of travel. DOTD maintains that the vehicles were traveling 3-5 mph. Plaintiffs argue that the vehicles were traveling below 3 mph.
|9A freightliner, driven by John Meshell, was approaching the work vehicles from the rear at a high rate of speed. Mr. Meshell was traveling in the inside lane attempting to pass another freightliner driven by Wendall Butcher. Mr. Butcher testified that Mr. Meshell swerved to the right as he barely passed Mr. Butcher’s truck in an effort to avoid hitting the attenuator truck. Mr. Meshell, however, clipped the back right corner of the shadow vehicle. This collision caused the attenuator truck to hit the motor grader and ricocheted Mr. Meshell’s truck across the median where it collided with an SUV traveling in the opposite direction. Carlos and Susanne Jones were the occupants of the SUV and both were killed. The surviving children of the Joneses are the Morales Plaintiffs. Mr. Meshell suffered injuries from both collisions, including a permanent brain injury. Mr. Meshell’s co-guardians filed suit on his behalf. Mr. Saldana suffered injuries as well and sued for damages.
DOTD filed a Motion for Summary Judgment asserting that it complied with the Manual for Uniform Traffic Control Devices (“MUTCD”) and the Maintenance Traffic Control Handbook (“Handbook”), which was derived from the MUTCD in order to assist DOTD employees in implementing the directives of the manual. DOTD argues that its compliance with the MUTCD and Handbook relieved the department of any liability for the accident. The trial judge found no “apparent issues of material fact” and further agreed that “DOTD was in fact in compliance |swith the regulations and therefore the law is in favor of DOTD for summary judgment.”[1] This appeal ensued.

DISCUSSION

A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate, ie., whether there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. Sensebe v. Canal Indem. Co., 10-0703 (La.1/28/11), 58 So.3d 441; Tillman v. Eldridge, 44,460 (La.App.2d Cir.7/15/09), 17 So.3d 69. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. In re Clement, 45,454 (La.App.2d Cir.8/11/10), 46 So.3d 804. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). *463 A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Generally, the party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, it is not necessary to refute every element of the claim. In that case, the |4moving party need only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim. La. C.C.P. art. 966(C)(2). The burden then shifts to the adverse party to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2).
DOTD’s duty is to maintain the public roadways in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence. La. R.S. 48:21(A); Netecke v. State ex rel. DOTD, 98-1182 (La.10/19/99), 747 So.2d 489. This duty, however, does not render DOTD the guarantor for the safety of all the motoring public. The existence of an unreasonable risk of harm may not be inferred solely from the fact that an accident occurred. Netecke, supra.
More specifically, in the recent decision of Skulich v. Fuller, 46,733 (La.App.2d Cir.12/14/11), 82 So.3d 467, this court recognized the well-settled law that compliance with the provisions of the MUTCD, which is mandated by La. R.S. 32:235, is prima facie proof of DOTD’s absence of fault when an injured motorist attempts to predicate DOTD’s liability on improper signalization or road marking. La. R.S. 32:235(E). We also noted that prima facie proof is sufficient only if not rebutted or contradicted. Skulich, supra, citing Donavan v. Jones, 26,883 (La.App.2d Cir.6/21/95), 658 So.2d 755, writs denied, 95-1786, 95-1891 (La.11/3/95), 661 So.2d 1379.
| pin support of its Motion for Summary Judgment, DOTD introduced the MUTCD and Handbook and noted adduced testimony (at the hearing on the motion) and affidavit evidence that it was in compliance with the MUTCD. Generally, the MUTCD establishes STANDARDS which are mandatory for the DOTD workers to follow, GUIDELINES which are suggestions, based on engineering judgment, and OPTIONS which may be utilized. The road grading work in the case sub judice falls within the STANDARD for a mobile work zone which is defined as “work that moves intermittently or continuously.” The temporary traffic controls for such work on freeways is also set forth in the MUTCD — the only STANDARD or mandatory requirement is an arrow board. There is a GUIDELINE, or suggestion, for the mobile operation that includes two shadow vehicles. This is not, however, a requirement.
In addition, the affidavit of Kirk Gallien, Assistant District Administrator for Operations for DOTD, attests that the MUTCD does not require the use of any shadow vehicles for mobile operations such as the one in the instant case. Further, Mr. Gal-lien attested that the use of a single shadow vehicle, with a flashing arrow board and crash attenuator, revolving strobe-type light and “CAUTION-SLOW MOVING VEHICLE AHEAD” sign for the mobile operation at issue complied with the STANDARDS of the MUTCD and the Handbook.
*464 With this evidence, the burden then shifted to Plaintiffs to produce evidence showing that there was a genuine issue of material fact as to whether DOTD had a duty to do more. In his testimony at the hearing, | (¡Plaintiffs’ expert, Donald Moore, agreed that DOTD was in compliance with the only STANDARD of the MUTCD. Plaintiffs go to great efforts to create issues of material fact, arguing that additional warnings should have been employed by DOTD and that GUIDELINES should have been implemented. However, there is simply no evidence that DOTD failed to comply with the only mandatory regulations in place at the time of the accident.
The record consistently indicates that the road was flat and straight and there were no physical characteristics of the Interstate or sight obstructions that warranted extra cautionary or warning devices. In fact, the only STANDARD required by the MUTCD was an arrow board; and, in this case, there was one shadow vehicle in use, which exceeds the requirements of the MUTCD for this type of maintenance operation. Plaintiffs urge that the factual discrepancy in testimony regarding the speed at which the operation was moving is a material fact bearing on compliance and should preclude summary judgment. We disagree. Mr. Gallien testified that an occasional drop ■ in speed below 3 mph would not change the classification of the operation or the advance warning requirements. The operation was continuously moving and the advanced warnings exceeded the minimum requirements of the MUTCD.
In summary, DOTD supported its motion with evidence of compliance with the MUTCD in warning the motoring public of the slow moving grading operation at issue. Nowhere do Plaintiffs’ experts sufficiently rebut this evidence. Our de novo review, therefore, leads us to |7conclude that summary judgment was properly granted in favor of DOTD and dismissing it from the suit.

CONCLUSION

For the foregoing reasons, the summary judgment in favor of the State of Louisiana, Through the Department of Transportation and Development, and dismissing it from the suit is affirmed. Costs of appeal are assessed equally to Plaintiffs Belinda Jones Morales, et al., and John Meshell, Through his Co-Guardians, Trade Meshell and Allison Dugal.
AFFIRMED.

. On appeal, DOTD further asserts immunity under the discretionary function exception in La. R.A. 9:2798.1. In light of our ruling that summary judgment was properly granted in favor of DOTD, we pretermit any discussion of this additional argument.