NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 13-1334

**HUEY LEGER, ET UX.**

**VERSUS**

**ICL AMERICA LIMITED, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2010-11106
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**David Ross Frohn**
**Frohn & Thibodeaux**
**P.O. Box 2090**
**Lake Charles, LA 70602-2090**
**(337) 433-5523**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Huey Leger**
    **Gwen Leger**

**Brett Anthony Stefanski**
**Russell Karl Zaunbrecher**
**Edwards, Stefanski & Zaunbrecher**
**P.O. Drawer 730**
**Crowley, LA 70527-0730**
**(337) 783-7000**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Huey Leger**
    **Gwen Leger**

**David Thomas Butler, Jr.**
**Funderburk & Butler**
**1111 South Foster Dr., Ste. G**
**Baton Rouge, LA 70806**
**(225) 924-1000**
**COUNSEL FOR INTERVENOR/APPELLEE:**
    **Bridgefield Casualty Insurance Company, Inc.**

**Frederick Scott Kaiser**
**Gregory T. Stevens**
**Alex J. Velazquez**
**Phelps Dunbar, LLP**
**P. O. Box 4412**
**Baton Rouge, LA 70821-4412**
**(225) 346-0285**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **ICL America Limited**

**Keith W. McDaniel**
**Quincy T. Crochet**
**Heather M. Nagel**
**McCranie, Sistrunk, Anzelmo, Hardy, McDaniel & Welch LLC**
**195 Greenbriar Blvd., Ste. 200**
**Covington, LA 70433**
**(504) 831-0946**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **D. E. Shipp Belting Co., Inc.**
    **Southern Vanguard Ins. Co.**

**Christopher H. Hebert**
**701 Robley Dr., Ste. 210**
**Lafayette, LA 70503**
**(337) 981-0309**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **First Financial Insurance Company**

**Michael J. Remondet, Jr.**
**Juliette B. Wade**
**Jeansonne & Remondet**
**P.O Box 91530**
**Lafayette, LA 70509**
**(337) 237-4370**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
 **H. Brown Cranes & Rigging, Inc.**
 **Colony National Ins. Co.**

**EZELL, Judge.**

This case presents the question of whether the trial court properly granted a motion for summary judgment filed by H. Brown Cranes & Rigging, Inc. and its insurer dismissing them from the case. A personal injury suit was filed against Brown Cranes after Huey Leger was injured during the process of replacing a belt on a grain elevator. The trial court held that the parties failed to establish any factual support for the claim of negligence on behalf of the crane operator. For the following reasons, we affirm the judgment of the trial court.

## FACTS

Rice Belt Distributors, Inc. is involved in the business of installing grain equipment throughout south Louisiana. Rice Belt was retained by People's Moss Gin plant in Palmetto to remove and install a vertical conveyor belt within a grain elevator, which was about eighty feet tall. In order to accomplish this task, Rice Belt engaged the services of Brown Cranes to assist with the conveyor belt's removal and installation. As part of these services, Brown Cranes provided the crane and the operator.

Prior to installation of the belt, Mr. Leger, his brother-in-law, and a worker from the gin installed the buckets on the belt at the gin itself. A four-man team from Rice Belt was present on March 3, 2010, to remove and install the new conveyor belt. The team consisted of the plaintiff, Mr. Leger; Cody Lanthier; Samuel LeBeouf; and Gary Lejeune. Mr. Leger and Mr. Lanthier were positioned on the walkway at the top of the grain elevator. Mr. LeBeouf and Mr. Lejeune were on the ground. Quentin Leblanc operated the crane for Brown Cranes. Utilizing a ninety-ton Link Belt crane, the old belt was removed without incident.

The 2,000 pound, 200 foot new belt was then attached to the crane. In order to facilitate the lifting of the new belt above the grain elevator, two nylon straps

were attached to the belt by Rice Belt employees. Testimony revealed that each strap measured four feet by six feet. The first strap was attached on the exact middle of the belt at one hundred feet. This strap was then connected to the block on the crane. The second belt was attached at fifty feet, holding the two sides together. It was also attached to the block.

Mr. LeBeouf then signaled to Mr. Leblanc to begin hoisting the belt upwards. After he finished hoisting the belt up, Mr. Leblanc then boomed up, or moved the load closer to him. At this point, Mr. LeBeouf signaled for Mr. Leblanc to swing over to the right to position the belt near the grain elevator. Once in front of the elevator shaft, Mr. Leblanc hoisted the belt up until the belt cleared the top of the elevator shaft. At this point, Mr. Leger took over the signaling duties.

Mr. Leblanc then boomed down about ten feet. Once the belt was directly over the center of the grain elevator, Mr. Leger started signaling for Mr. Leblanc to hoist down until the belt was at the point where the belt was attached at the fifty-foot point. Mr. Leger asked Mr. Leblanc to raise the crane a little bit to put some tension on the belt to make it easier to remove the strap. Mr. Lanthier testified that he asked Mr. Leger to pull the belt from him because it was swinging too much. At this point the belt tore in half and fell in two pieces landing on Mr. Leger and Mr. Lanthier. Mr. Leger and Mr. Lanthier were transported to the hospital by ambulance.

Mr. Leger and his wife filed the present lawsuit against ICL America Limited, an alleged manufacturer of the belt; D.E. Shipp Belting Company, also an alleged manufacturer of the belt; and Brown Cranes. The Legers later added Brown Cranes' insurer, Colony National Insurance Company; D.E. Shipp's insurer, Southern Vanguard Insurance Company; and ICL's insurer, First Financial Insurance Company, as defendants. Additionally, International Conveyors Limited,

2

an alleged manufacturer of the belt, and its insurer, ICICI Lombard General Insurance Company, Ltd., were also added as defendants.

A hearing on the motion for summary judgment was held on July 8, 2013. The trial court held that there was no evidence to establish the negligence of Brown Cranes in the causation of the accident. Judgment was signed on July 18, 2013, and this appeal followed.

## DISCUSSION

A motion for summary judgment must be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, admitted for the purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2). "[O]nly evidence admitted for purposes of the motion for summary judgment may be considered by the court in its ruling on the motion." La.Code Civ.P. art. 966(F)(2). "Generally, the party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, it is not necessary to refute every element of the claim." *Skulich v. Fuller*, 46,733, p. 3 (La.App. 2 Cir. 12/14/11) 82 So.3d 467, 470. Then, the mover is only required to show "an absence of factual support for one or more elements essential to the adverse party's claim." La.Code Civ.P. art. 966(C)(2). Thereafter, the burden shifts, and the adverse party must "produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial." *Skulich*, 82 So.3d 470 (citing La.Code Civ.P. art. 966(C)(2)).

Furthermore, La.Code Civ.P. art. 967(B) provides that when a motion for summary judgment is made and supported by competent evidence, "an adverse party may not rest on the mere allegations or denials of his pleading." We review

3

summary judgments de novo, using the same criteria that govern the trial court's consideration of whether or not summary judgment is appropriate. *Sensebe v. Canal Indem. Co.*, 10–703 (La. 1/28/11), 58 So.3d 441.

We find that the Legers failed to establish any facts which suggest that the crane operator's negligence caused the belt to tear in half and fall on Mr. Leger. It has been suggested that there is a conflict in the testimony as to whether the crane was moving at the time the belt tore. While the majority of the witnesses testified that the crane was not moving the belt at the time of the accident, there is no evidence to suggest the action of the crane operator in moving the belt up or down was a cause of the belt tearing even if it was moving at the time it fell. The crane was specifically hired to move the belt up and down for its installation into the elevator.

Evidence also established that the oiler for Brown Cranes who was supposed to be at the job was running late and had not arrived by the time of the accident. An oiler helps the crane operator rig up the crane and gets him anything he needs. The oiler also operates as another pair of eyes on the ground to observe if anything is not right with the load or crane itself. Mr. Leblanc did have another Brown Cranes employee who helped him rig up the crane. After he finished helping Mr. Leblanc, the other employee left to work on another job.

Even though Brown Cranes did not have another employee on the ground, Rice Belt had two employees on the ground that were observing the operation. Mr. Leblanc's testimony revealed that he was taking cues from both these employees and Mr. Leger and Mr. Lanthier who were at the top of the elevator. No evidence suggests that another person would have noticed the belt tearing before any of the five people who were on the scene at the time of the incident.

4

It has also been argued that Brown Cranes was responsible for ensuring that everyone in its vicinity wore the proper safety equipment. None of the Rice Belt employees were wearing hard hats. While Mr. Leblanc agreed that he has had to instruct customers to put on safety equipment, testimony also revealed that the Rice Belt employees never wore hard hats when changing a belt. Rice Belt did not require the use of hard hats when changing a belt. It only required the use of a safety belt.

There is no evidence to suggest any negligence by Brown Cranes which was a possible cause for the belt tearing and falling. For these reasons, the trial court's granting of the motion for summary judgment filed by Brown Cranes was appropriate. Costs of this appeal are assessed equally to the Legers; ICL America Limited; D.E. Shipp Belting Company and Southern Vanguard Insurance Company; and Bridgefield Casualty Insurance Company, Inc.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2–16.3.