921 So.2d 205 (2006)
Gabrela Garcia and Andrew GARCIA, Plaintiffs-Appellees,
v.
FURNACE AND TUBE SERVICE, INC. and John D. Broussard, Defendants-Appellants.
No. 40,517-CA.
Court of Appeal of Louisiana, Second Circuit.
January 27, 2006.
*207 Travis M. Holley, Bastrop, Ellender & Ellender by Daniel Joseph Ellender, Monroe, for Appellees.
Lavalle B. Solomon, for Appellant John D. Broussard.
Theus, Grisham, Davis & Leigh by Phillip D. Myers, Monroe, for Appellant Furnace & Tube Service, Inc.
G. Scott Moore, Monroe, for Appellant Gray Insurance Company.
Before BROWN, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
This appeal arises from the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana. Furnace and Tube Service, Inc. ("Furnace and Tube") appeals the trial court judgment holding it vicariously liable for damages sustained by an employee, Andrew Garcia, as a result of the intentional tort committed by John Broussard, a co-employee. Garcia answered the appeal seeking an increase in *208 the damage award and attorney fees. For the reasons stated herein, the judgment of the trial court is amended to include future medical costs.

FACTS
This matter stems from a physical altercation which occurred between two employees of Furnace and Tube on January 4, 2004. Andrew Garcia and John Broussard were employed as welders with Furnace and Tube to work on a project welding boiler tubes in Sterlington, Louisiana. Although Garcia worked other jobs for Furnace and Tube, he had been working at the Sterlington job site only a few days when the altercation occurred. On the day of the incident, Garcia drove his own vehicle to the gate of the plant and was then driven to the job site by an employee of Furnace and Tube in an employer truck. Prior to this job assignment, Garcia and Broussard had never met, nor was there evidence of any prior problems between the men.
Right before the conflict began, a quality control officer named Stanley Hebert approached Garcia at the site where he was welding a boiler tube. Hebert inspected Garcia's work to check the quality and apparently did not find it to be substandard. After Hebert walked away, Garcia questioned Broussard concerning some negative comments he allegedly made to Hebert regarding Garcia's work quality. Broussard denied making any negative comments to Hebert and then a verbal argument ensued. The two men faced off, but no physical blows were exchanged. It was during this verbal exchange that Garcia reportedly told Broussard to "mind his own f____g business." Following the verbal encounter, Garcia walked away after picking up his tool box, and he told James Dortch, the foreman who was nearby on a forklift, that he was "out of here." Garcia then proceeded to walk a distance of 50 feet and got into the back of the foreman's pick-up truck that was used to transfer the employees to the front gate at the end of the work shift. Within a couple of minutes, Broussard was seen walking in the direction of the truck. Testimony as to what occurred varied by the parties.
Broussard did not attend the trial, but he gave testimony by way of deposition. He testified that after the two men faced off, they agreed to go fight outside the gate, and he stated that is why he went to the pick-up truck where Garcia was sitting. He stated that Garcia picked up the metal pry bar first and initiated the attack. Broussard further testified that he then took the metal pry bar from Garcia and that Garcia then picked up a sucker rod from the truck. It was Broussard's testimony that this provoked him to swing at Garcia with the metal pry bar in self-defense.
In contrast to Broussard's testimony, Garcia testified that after the men had a verbal exchange, he picked up his tool box, walked to the foreman's truck and got into the back of the truck with the intent to quit the job and leave. Garcia denied initiating the attack. He testified that after he got into the truck bed, Broussard walked up to the truck, grabbed the metal pry bar from the side of the truck and began swinging it at him. Garcia stated he was struck so forcibly on his arm that it caused him to fall out of the truck bed onto the ground. He testified that Broussard continued to hit him with the metal pry bar and that he finally was able to get up and run to a nearby toolshed. Garcia stated that at that point he realized he had sustained a compound fracture to his left arm.
Dortch testified that although he did not witness the first blow, he did witness Garcia walk to the truck and shortly after he *209 saw Broussard walk in the same general direction. He testified that when he next looked, he saw Garcia fall from the back of the truck onto the ground. Dortch stated that Broussard continued to hit Garcia while he was on the ground so he ran over to the men to try and stop the altercation. He testified that although he attempted to intervene, Broussard continued to hit Garcia with the metal pry bar. Dortch stated that Garcia finally got up and ran away to a nearby toolshed.
Hebert confirmed that Broussard asked him to inspect Garcia's work on the boiler tube and that after doing so he did not find a problem with the workmanship.
Following the attack, Garcia was taken to North Monroe Community Hospital for treatment. Surgery was performed by an orthopedic surgeon named Dr. Randolph H. Taylor. Dr. Taylor testified that he used a six-inch metal plate and eight screws to repair the fracture of Garcia's ulna and dislocated radius. Subsequent to the surgery, Garcia was placed under the care of another orthopedic surgeon in Beaumont, Texas by the name of Dr. John T. Taylor. Garcia was seen by Dr. Taylor over the course of the next nine months. After some period of time, Dr. Taylor found evidence that the ulna was not healing properly, so he prescribed a mechanism for Garcia to wear which would facilitate the healing process. Dr. Taylor testified that x-rays taken later revealed that the fracture to Garcia's forearm had healed properly. Although Garcia still experiences some sensitivity in the area of the injury, Dr. Taylor released him to return to work with the limitation of lifting no more than 75 pounds.
As a result of the attack by Broussard, Garcia incurred $17,878.24 in medical expenses during treatment. The parties stipulated that Garcia was paid worker's compensation benefits in the amount of $16,731.00 based on his weekly earnings of $928.48 for thirty-nine (39) weeks of missed work. It was determined that Garcia had a 10% upper extremity impairment which resulted in a six percent whole person impairment. Dr. Taylor opined that future surgery may be recommended to remove the metal plate from Garcia's arm if he continued to experienced discomfort or sensitivity due to the retention of the metal plate. Dr. Taylor estimated that surgery to remove the metal plate from Garcia's arm would cost around $5,000.00.
Garcia filed this action for damages against both Broussard and Furnace and Tube, alleging that he was the victim of an intentional battery and that Furnace and Tube was vicariously liable for the actions of its employee, Broussard. Garcia's wife, Gabrela Garcia, made a claim of loss of consortium, which ultimately was dismissed prior to the commencement of the trial. Furnace and Tube answered Garcia's petition denying liability and contending that Garcia was the initial aggressor. They also filed an affirmative defense that Garcia's claims against them were limited to worker compensation benefits. Gray Insurance Company ("Gray Insurance"), the workers compensation insurer of Furnace and Tube, intervened in the action seeking reimbursement of the $34,609.24, in total benefits it paid on behalf of Garcia.
A bench trial was held with only Garcia testifying in person. All other evidence was submitted by deposition. After taking the matter under advisement, the trial court issued written reasons for judgment, finding both Broussard and Furnace and Tube liable, in solido, and that Furnace and Tube was vicariously liable for the actions of its employee, Broussard. The trial court awarded Garcia $75,000.00 for all damages, less the amount of $34,609.24 as reimbursement to the intervener, Gray Insurance, and it awarded Garcia attorney *210 fees against Gray Insurance equal to one-third of Gray's reimbursement judgment. Furnace and Tube filed a suspensive appeal, and Garcia answered the appeal.

DISCUSSION
On appeal, Furnace and Tube challenge the trial court's finding of vicarious liability on its part. In the alternative, it seeks an allocation of fault against Garcia. In his answer to the appeal, Garcia requests an increase in the damage award, and, that the award of attorney fees be set at forty percent (40%) as provided for in his attorney-client contract. Garcia has since abandoned his request for an increase in attorney fees as stated in his appellate brief.
A court of appeal should not set aside a trier of fact's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one, after reviewing the record in its entirety. Stobart, supra.
In its first assignment of error, Furnace and Tube contend the trial court erred in finding it was vicariously liable for the damages inflicted upon Garcia by Broussard. It acknowledges that Broussard committed an intentional tort on Garcia and that the initial verbal argument between the two men stemmed from Broussard's comments made to the quality control inspector regarding Garcia's workmanship. However, Furnace and Tube argues that the two employees separated after the initial verbal confrontation and that Garcia walked to the foreman's truck with the intent of quitting his job. It contends that the subsequent actions of Broussard attacking Garcia were outside the ambit of his assigned duties and did not further the objectives of Furnace and Tube. It maintains that Broussard's actions were motivated by his purely personal considerations, and, therefore, would preclude a judgment of vicarious liability on Furnace and Tube.
An employer can be vicariously liable both for its own intentional acts and the intentional acts of its employees. Jones v. Thomas, 426 So.2d 609 (La. 1983). The employer's liability, however, extends only to those acts which are within the course and scope of the injuring employee's employment. La. C.C. art. 2320; Baumeister v. Plunkett, 95-2270 (La.05/21/96), 673 So.2d 994; Orgeron on Behalf of Orgeron v. McDonald, 93-1353 (La.07/05/94), 639 So.2d 224; Eichelberger v. Sidney and National Hair Care Center, Inc., 34,040 (La.App.2d Cir.11/03/00), 771 So.2d 863, writ denied, XXXX-XXXX (La.02/09/01), 785 So.2d 827.
The course of employment refers to time and place. The scope of employment test examines the employment-related risk of injury. For the employer to be vicariously liable, the tortious conduct of the employee must be "so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." Stacy v. Minit Oil Change, Inc., 38,439 (La.App.2d Cir.05/12/04), 874 So.2d 384. An employer is not vicariously liable merely because its employee commits an intentional tort on the business premises during working hours. Patrick v. Poisso, 38,841 (La.App.2d Cir.09/22/04), 882 So.2d 686; Stacy v. Minit Oil Change, Inc., supra; *211 Guy v. Mitchell, 35,713 (La.App.2d Cir.03/01/02), 810 So.2d 1245.
In LeBrane v. Lewis, 292 So.2d 216 (La.1974), the Louisiana Supreme Court articulated four factors in holding an employer liable for its supervisor's actions in stabbing a fellow employee:
(1) whether the tortious act was primarily employment rooted;
(2) whether the violence was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.
The Louisiana Supreme Court has subsequently held that not all four of these factors need be met to impose liability. Miller v. Keating, 349 So.2d 265 (La.1977); Stacy v. Minit Oil Change, Inc., supra. A finding of employment, factors (3) and (4), without more, is insufficient to impose vicarious liability. A finding of scope of employment hinges on the predominant motive of the tortfeasing employee, whether the purpose of serving the employer's business actuated the employee to any appreciable extent. Patrick v. Poisso, supra. Generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. Patrick v. Poisso, supra.
Furnace and Tube contend the trial court erred when it determined the intentional tort by Broussard was within the scope of his employment. In written reasons for judgment, the trial court found the battery committed by Broussard was within the scope of his employment under the four guidelines established by the Louisiana Supreme Court to determine an employer's vicarious liability in LeBrane v. Lewis, supra.
A review of the evidence shows that the physical altercation between these two employees arose after Broussard alerted the quality control supervisor about concerns he had regarding the quality of Garcia's work at the job site. The record is void of any evidence of previous problems existing between the two employees. There is no evidence that Broussard's request that the quality control supervisor inspect Garcia's work stemmed from some personal issue he had with Garcia. We find nothing in the record to substantiate that this was a personal issue. To the contrary, it could be seen as an issue which would promote the interest of the employer if indeed Garcia's work was found to be substandard. We do, however, recognize that it was not Broussard's job to check the quality of Garcia's work.
Although Furnace and Tube cite the case of Stacy v. Minit Oil, supra in support of their position, the facts in the instant case are easily distinguishable. In Stacy, there were some personal issues existing between the two co-employees before they even began to work the day the intentional tort was committed. The two employees in Stacy continued to argue while on the job and things began to escalate. Before any physical blows were exchanged, the supervisor stepped in and told both employees to drop the pipes they were holding in threat to each other. Although one employee obeyed the supervisor, the tortfeasor ignored the supervisor's command and hit the other employee.
Here, the initial issue was work related, it occurred during work hours and it occurred while both employees were on the employer's premises. By the time Dortch stepped in to stop the altercation, Broussard had already hit Garcia with such force *212 that it caused him to fall from the back of the truck onto the ground. Furnace and Tube argue that when Garcia left his welding post and walked to the truck, he was no longer under the scope of his employment. We disagree and find that all of these events occurred at such a rapid pace that it was not unreasonable for the trial court to conclude that the intentional tort fell within the scope of these employees employment.
A review of the facts in Poisso, supra, shows that those facts are distinguishable from the present facts. Poisso involved an off duty police officer who was with his family when he stopped the victim of his battery. In the case sub judice, both employees were at the job site and had only walked a short distance from the welding site while remaining on the employer's premises. As stated, the entire episode happened within a few minutes from the time the quality inspector left the boiler tube site, and the two employees had a verbal exchange.
We find the record adequately establishes that the intentional tort committed by Broussard was reasonably incidental to the performance of his duties and employment-rooted. We find little significance in the fact that Garcia left his post where he was actually welding and walked approximately 50 feet to the foreman's truck stating, "I'm out of here." Garcia was sitting in his employer's truck on the employer's premises waiting to get a ride back to the front gate where his vehicle was parked. We thus reject Furnace and Tube's arguments and find no manifest error in the trial court's conclusion that Broussard's intentional tort did fall within the scope of the job. This assignment of error lacks merit.
Next, Furnace and Tube contend the trial court erred in failing to assess fault to Garcia for using profanity directed to Broussard before he struck Garcia with the metal pry bar. Here, Garcia made a statement to Broussard "to mind his own f____g business" after the quality supervisor inspected his work on the boiler tube. Although the use of profanity by Garcia may be calculated to have excited and irritated Broussard, we do not believe the words uttered by Garcia rise to a verbal provocation that would incite a reasonable person to commit such a vicious attack on another. The record indicates that Broussard has an extensive history of violent behavior. Also notable is the fact that Garcia removed himself from the presence of Broussard following the initial verbal exchange. After reviewing the record in its entirety, we do not find the trial court committed manifest error by failing to assess Garcia with any degree of fault. We believe the trial court was in a better position to judge the credibility of Garcia's testimony, and, apparently it found his version to be more credible and adequately substantiated by the testimony of the other employees who witnessed part of the confrontation. This assignment of error is without merit.
Finally, Garcia contends the trial court abused its discretion in awarding him general damages in the amount of $16,000.00. He seeks an increase in the award, arguing it is woefully inadequate.
The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy of the award should be determined by the facts and the circumstances particular to the case under consideration. An appellate court should rarely disturb an award of general damages since the discretion vested in the trier of fact is "great." The standard of review is nonspecific, and only when the award, in either direction, is beyond that which a reasonable trier of fact could assess for *213 this particular injury to this particular plaintiff under these particular circumstances should an appellate court increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Wheelis v. CGU Ins., 35,230 (La.App.2d Cir.12/07/01), 803 So.2d 365. Only after a determination of an abuse of discretion is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point that is reasonable within that discretion. Youn, supra.
Garcia was a 37-year-old married man with two children at the time of the incident. He is a citizen of Texas and works as a welder. After a recovery period of nine months, during which time he received worker's compensation, he was released to return to work. The medical testimony indicates his injuries have healed, although he has been assessed to have a 10% upper extremity impairment, resulting in a six percent 6% whole person impairment.
The trial court awarded Garcia a lump sum of $75,000.00. The parties stipulated that Garcia's lost wage claim amounted to $35,898.72, which was an increase of $19,167.72 in lost wages over the worker compensation benefits paid in the amount of $16,731.00. Once Gray Insurance's reimbursement claim is subtracted, the remaining damage award for general damages is $21,223.04.
Garcia argues this general damage figure will be reduced even further if Garcia undergoes a second surgery to remove the metal plate from his arm. Dr. Taylor estimated this cost to be $5,000.00. An award for future medical expenses that may or may not be incurred requires medical testimony that they may be indicated and the probable cost. Quinn v. Wal-Mart Stores, Inc., 34,280 (La.App.2d Cir.12/06/2000), 774 So.2d 1093, writ denied, XXXX-XXXX (La.03/09/01), 786 So.2d 735.
Dr. Taylor testified that retaining the metal plates could cause some sensitivity problems for Garcia in the future. He indicated this may occur when Garcia bumps his arm. It is conceivable that as a welder, and in general, there may be occasions where Garcia would hit his arm on an object resulting in some discomfort due to the internal metal plate. So considering, we do not find it unreasonable to conclude that a future surgery to remove the metal plate may be likely. Thus, the general damage award will be increased by $5,000.00 to accommodate this future surgery.

CONCLUSION
For the reasons assigned, we amend the judgment to increase the damage award to $80,000.00 to include the $5,000.00 cost of a second surgery to remove the metal plates from Garcia's arm. In all other aspects, the judgment is affirmed. Costs of these proceedings are assessed to Furnace and Tube.
AS AMENDED, AFFIRMED.