LOLLEY, J.
| ¶ Lisa Cote, individually and on behalf of Mallory Brooke Fuller, appeals the judgment by the First Judicial District Court, Parish of Caddo, State of Louisiana, in favor of the City of Shreveport (the “City”), granting the City’s Motion for Summary Judgment. For the following reasons, we affirm the trial court’s judgment.
Facts
On April 2, 2007, at approximately 1:30 a.m., Leon Bell, Jr., entered Cote’s home in the 200 block of Leo Avenue in the Broadmoor neighborhood of Shreveport. Cote was held at knife-point by Bell until Cote’s daughter screamed and Bell fled the residence. After an investigation Bell was arrested and charged with aggravated burglary and second degree kidnaping. Ultimately, Bell pled guilty to second degree kidnaping and is presently serving a nine-year hard labor prison sentence in the Louisiana Department of Corrections.
When Bell committed this crime, he was employed by the City in the water department as an assistant trouble-shooter. On the date of the incident, Bell had been working overtime notifying customers of water being turned off in the Broadmoor area. According to the City’s records, Bell clocked out of work at 8:30 p.m. As stated, the crime at Cote’s home occurred at approximately 1:30 a.m.
As a result of the incident, Cote filed suit against the City. In that lawsuit, Cote maintains that on March 31, 2006 (before the subject incident), Bell came to her house to “check her water,” and she allowed him into her home. According to Cote, Bell repeatedly returned to her home, but |2she did not allow him in on those subsequent visits. She also alleges that another time, Bell attempted to enter her home through the back door, but eventually left her property. Cote claims that she informed the City on June 1, 2006, of these incidents with Bell; however, the City has no record of a complaint made against Bell.
In her petition, Cote contends that the City should be held vicariously liable to her, individually and on behalf of the minor child, because the damages she suffered were a result of Bell acting within the course and scope of his employment with the City. She further alleges that the City was negligent for: failing to report Bell as being dangerous; hiring someone with dangerous propensities; not suspending or discharging Bell after being advised of his previous behavior; and, failing to warn the public, particularly Cote, of Bell.
The City moved for summary judgment, asserting that if the facts as alleged in Cote’s petition were taken as true, the City could not be held liable for Bell’s intentional criminal actions, because at such time Bell was not acting in the course and scope of his employment. The trial court rendered judgment dismissing all of Cote’s claims, and the instant appeal ensued.
*438 Discussion
On appeal, Cote argues that the trial court erred in granting summary judgment in favor of the City because there exist material issues of fact in dispute. Specifically, Cote maintains that material facts are in dispute on | ¡¡whether the City was vicariously liable for Bell’s actions, and whether it was negligent in retaining Bell as an employee. We disagree.
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Samaha v. Rau, 2007-1726 (La.02/26/08), 977 So.2d 880; Adams v. JPD Energy Inc., 45,420 (La.App.2d Cir.08/11/10), 46 So.3d 751, writ denied, 2010-2052 (La.11/12/10), 49 So.3d 892. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Sensebe v. Canal Indem. Co., 2010-0703 (La.01/28/11), 58 So.3d 441. A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B. Summary judgment is usually not appropriate for claims based on subjective facts such as motive, intent, good faith, knowledge and malice. Phipps v. Schupp, 2009-2037 (La.07/06/10), 45 So.3d 593; Johnson v. Pinnergy Ltd,., 46,188 (La.App.2d Cir.04/13/11), 63 So.3d 302. However, summary judgment may be granted on subjective intent issues when no genuine issue of material facts exists concerning the pertinent intent. Phipps v. Schupp, supra; Johnson v. Pinnergy Ltd., supra.
Appellate courts review summary judgments de novo, using the same criteria that govern the district court’s consideration of whether summary ^judgment is appropriate. Sensebe v. Canal Indem. Co., supra; Tillman v. Eldridge, 44,460 (La.App.2d Cir.07/15/09), 17 So.3d 69.

Vicarious Liability

An employer can be vicariously liable both for its own intentional acts and the intentional acts of its employees. Jones v. Thomas, 426 So.2d 609 (La.1983). The employer’s liability, however, extends only to those acts which are within the course and scope of the injuring employee’s employment. La. C.C. art. 2320; Baumeister v. Plunkett, 95-2270 (La.05/21/96), 673 So.2d 994; Garcia v. Furnace and Tube Service, Inc., 40,517 (La.App.2d Cir.01/27/06), 921 So.2d 205.
The course of employment refers to time and place. The scope of employment test examines the employment-related risk of injury. For the employer to be vicariously liable, the tortious conduct of the employee must be “so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer’s business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer’s interest.” Garcia, supra; Stacy v. Minit Oil Change, Inc., 38,439 (La.App.2d Cir.05/12/04), 874 So.2d 384.
 In LeBrane v. Lewis, 292 So.2d 216 (La.1974), the Louisiana Supreme Court articulated four factors in holding an employer liable for its employee’s actions in stabbing a fellow employee:
(1) whether the tortious act was primarily employment rooted;
*439 |a(2) whether the violence was reasonably incidental to the performance of the employee’s duties;
(3) whether the act occurred on the employer’s premises; and,
(4) whether it occurred during the hours of employment.
A finding of scope of employment hinges on the predominant motive of the tortfeasing employee, whether the purpose of serving the employer’s business actuated the employee to any appreciable extent. Garcia, supra; Patrick v. Poisso, 38,841 (La.App.2d Cir.09/22/04), 882 So.2d 686. Generally speaking, an employee’s conduct is within the course and scope of his employment if the conduct is of the kind he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. Id.
In Johnson v. Littleton, 45,323 (La.App.2d Cir.05/19/10), 37 So.3d 542, a McDonald’s employee threw hot french-fry grease on a customer with whom she had an acrimonious history, causing the victim serious burns to her body. After considering the LeBrane factors, the Johnson court concluded that the employer did not have vicarious liability as to that employee’s specific criminal actions. Although that particular incident had actually occurred on the employer’s premises and during work hours, we emphasized that the first two LeBrane factors were not met, because the record showed that the attack was motivated by the employee’s personal anger toward the victim and was not motivated by service to the employer. The Johnson court further observed that the physical attack on the victim in Rno way furthered the objectives of business at the McDonald’s restaurant. Id. at 547.
In this case, it is apparent that not any of the four LeBrane factors are present, thus making summary judgment appropriate. Initially, we note that the last two factors are obviously not met. The incident did not occur on the employer’s premises or during working hours — the crime occurred at Cote’s home in the middle of the night after Bell was off the clock. Nor are the first two factors met. Bell’s actions were not employment-rooted or incidental to the performance of his duties as a trouble shooter for the City’s water department. Bell was not acting in a way which served to further the objectives of the City. Had Bell been at Cote’s home on official City business, this fact might create a genuine issue. However, Bell’s act of breaking into Cote’s home in the middle of night and holding a knife to her neck certainly was not incidental to the performance of his duties as a troubleshooter in the City’s water department. Even if Bell somehow had knowledge regarding Cote as a result of his employment with the City, such information is far too attenuated in this case to be rooted in his employment. Carried to that extreme, any contact Bell had with a citizen could be considered rooted in his employment. Summary judgment as to this claim was proper.

Negligent Hiring, Supervision and Retention

Cote also claims that the City was negligent in: failing to report Bell as dangerous; hiring Bell; not suspending or discharging Bell after being advised of his violation of the City’s policies and procedures; and, failing to |7warn her of the dangers of Bell. Cote bases these claims on the incidents in 2006 where Bell came into her house and then repeatedly returned. As stated, Cote claims that she called the City to inquire whether Bell had authority to be in her house, and she put the City on notice as to Bell’s violent potential.
*440 A claim against an employer for the torts of an employee based on the employer’s alleged direct negligence in hiring, retaining, or supervising the employee generally is governed by the same duty-risk analysis used for all negligence cases in Louisiana. Griffin v. Kmart Corp., 00-1334 (La.App.5th Cir.11/28/00), 776 So.2d 1226, 1231. When an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party, he has a duty to exercise reasonable care in the selection of that employee. Id.
The fact that Bell came to Cote’s house a year prior to his subsequent crime against her puts a unique kink in the facts of this case. However, the record is clear that Cote, although she called the water department and made inquiry into Bell’s actions, did not make an official complaint regarding Bell. Cote did not identify Bell by name to the City when she called. Further, it is notable that in 2006 the City did not authorize Bell to be in Cote’s home, and his actions in entering Cote’s home at that time were based on personal motivation as well. Moreover, there is absolutely nothing in the record to suggest that the City had any prior knowledge that Bell had a propensity to act violently toward the public he served. He did not have a criminal record prior to this incident. Neither does the record reflect any | sinformation regarding his employment record and any discipline actions that would have indicated he had violent propensities. It is difficult to see how the City, based on the information in this record, could have anticipated Bell’s actions. Therefore, we find that Cote has failed to present any evidence indicating that she would meet her burden of proof on this issue, making summary judgment in favor of the City as to these claims proper.
Conclusion
Considering the foregoing, we affirm the trial court’s summary judgment in favor of the City of Shreveport which dismissed the claims made by Lisa Cote, individually and on behalf of her daughter Mallory Brook Fuller. All costs of this appeal are assessed to the appellant.
AFFIRMED.