CLARENCE E. McMANUS, Judge.
| ¡.PROCEEDINGS
On September 28, 2008, plaintiff Frank Masanz, Jr. filed a petition in redhibition and for damages. He named as defendants, Premier Nissan, Inc. and its employee, Carlos Zuniga. By supplemental petition he added as defendant Adil Moun-is, who had been the service manager for Premier at the time of the sale. In his petition Masanz alleged that on April 21, 2008, he purchased a 2001 GMC Sierra SLE for $5,600.00 from Premier Nissan, through its salesman, Mr. Zuniga. Prior to selling him the Sierra, Zuniga showed him a Car Fax that was purported to be a report for the vehicle (however he later discovered that the serial numbers did not match). The next day, Mr. Masanz met with Mr. Mounis to complete the transfer of title and bill of sale. The meeting was not at Premier Nissan; instead it was at Casey & Casey, MPS Inc. DVA Auto Title Express. Approximately one month later, on May 29, 2008, as Mr. Masanz was driving the Sierra, it caught fire and was completely destroyed. Masanz alleges that the cause of the fire was a misplaced wire that apparently was present prior to the sale. In his petition, Masanz requested rescission of the sale and bad faith penalties and attorney fees, as well as damages for personal property, loss of use, inconvenience, mental anguish and distress, loss of enjoyment of life and other damages.
|sIn its answer, Premier Nissan alleged that it did not own the vehicle sold, and that Mr. Zuniga was acting outside of the course and scope of his employment by selling an un-owned vehicle on Premier’s premises. By way of third party demand, it named Mr. Mounis as the true seller of the vehicle and prayed that it be allowed indemnification and recovery from Mounis should it be cast in judgment.
Adil Mounis, despite being served by special process servers, failed to answer the petition and failed to appear at trial.
Trial was held on August 31, 2010. At trial it was established that the truck was not owned by Premier Nissan, but by Amanda McKay (wife of Mr. Mounis). On November 31, 2010, the trial court signed a judgment finding Premier Nissan, Carlos Zuniga and Adil Mounis in solido liable for the return of plaintiffs purchase price, plus expert witness fees of $1,736.00 and costs. Mr. Zuniga and Mr. Mounis were found to be liable in solido for general damages of $2,000.00 and damages for loss of personal possessions of $6,401.00. Finally, judgment was rendered in favor of Premier Nissan and against Mr. Mounis for $5,600.00, representing the purchase price of the vehicle, the expert fee of $1,736.00, judicial interest and costs.
Premier Nissan, Carlos Zuniga, and plaintiff Masanz each appealed the judgment of the trial court.
FACTS
The following was established at trial. On April 21, 2008, 20-year-old Frank Ma-sanz (plaintiff) went to Premier Nissan on Veterans Blvd. to purchase a used vehicle. This was his first vehicle purchase. He met Carlos Zuniga, who presented himself as a representative of Premier Nissan, and gave him a business card to that effect. At the time, Zuniga was wearing a t-shirt with Premier’s logo, and at no time did he indicate that he was working for someone *172 other than Premier LNissan. They looked at several vehicles during a two-hour period, and ultimately Mr. Masanz decided to purchase a 2001 GMC Sierra. Mr. Masanz understood that the vehicle was a Premier Nissan vehicle, and he was not informed otherwise. He was also told that the vehicle was in good working condition. He was shown a Car Fax, which he believed was for the vehicle he was purchasing. Later he discovered that the VIN on the Car Fax did not match the VIN on the vehicle he purchased.
Mr. Masanz testified that he paid $5,600.00 in cash, and entered into a written bill of sale, while on the premises of Premier Nissan. At that time, he received the keys for the vehicle.
Carlos Zuniga testified that Mr. Masanz came onto the lot and looked at a few cars, but did not see any he was interested in. He then showed Masanz a truck, owned by Mr. Mounis, located in the back of the lot behind the building. At that time, Mr. Mounis was acting manager of Premier Nissan’s Used Car Department. Zuniga collected the money from Masanz and gave it to Mounis, who then wrote a receipt to give to Masanz. Zuniga testified that he told Mr. Masanz that the truck was owned by the Used Car Sales Manager, who was Mounis. Zuniga did not recognize the bill of sale given to Masanz.
As instructed, Mr. Masanz went to Casey & Casey Title the next day and completed the transfer of title on the vehicle. He was met by Mr. Adil Mounis, who was wearing a Premier Nissan t-shirt. There was also a woman there, which at trial he opined may have been Ms. McKay. Carlos Zuniga was not there. The title transfer paper states that the purchase price was $4,000.00, but he was told by both Mr. Zuniga and Mr. Mounis that the price was stated as lower that it actually was to benefit both him and Premier Nissan, relative to taxes.
RZuniga also stated that there was no benefit to Premier Nissan in the transaction in which he sold the truck to Masanz. Mounis paid him a commission of $300.00 for selling the truck. He also stated that he believed Amanda McKay was Mounis’ wife.
Amy Casey of the Casey & Casey, MPS Inc. DVA Auto Title Express testified that according to the records of the State of Louisiana, Amanda McKay sold the vehicle in April of 2008 to Mr. Masanz. The stated sales price was $4,000.00. She stated that there was a benefit to the purchaser, but not to the seller, in stating a lower price than the actual price. She further testified that the records reflected that Premier Nissan was a prior owner of the vehicle and that they had sold it to Ms. McKay in January of 2008 for $2,000.00. In a sale from a dealership, the DMV requires that the bill of sale has the dealer’s letterhead, with the dealer’s code and dealer license number issued by the Motor Vehicle Commission. The bill of sale that was given to Mr. Masanz did not have those features. Furthermore, the signature on the bill of sale given to Mr. Masanz did not match the bill of sale used to transfer title.
Nancy Chanthanhothirat of Casey & Casey testified that both Amanda McKay and Mr. Masanz came into the office on the date the title was transferred. She was unsure if anyone else was with them. She was a witness on the documents.
Mr. Masanz drove the truck for one month and then it caught on fire. Immediately prior to the fire, he had driven over some railroad tracks, which caused the electronics on the dashboard to “go crazy.” During that one month period, he changed the oil but made no repairs. The cab of the pickup was totally destroyed, as were *173 his possessions. (At trial, he submitted a detailed, itemized list of his personal possessions destroyed in the truck fire, totaling $6,401.00.)
| (jMasanz contacted Premier Nissan; however, it would not return his money or replace the vehicle. He had been using the truck for work, and he was out of work for three months as a result. At that time, he was averaging $1,600.00 monthly in earnings.
At trial he testified that he would not have purchased the truck had he known it was a fire hazard. He bought the truck because it was represented to him that it was in good shape without a defect and the representation was supported by what he believed was a Car Fax pertinent to the truck. He also believed that he was purchasing the truck from Premier Nissan.
Donald Horaist, a Fire Specialist and Investigator for Unified Investigations and Sciences, was qualified as an expert in cause and origin in fire cases. He testified that he first inspected the vehicle on June 13, 2008. He opined that the fire first started in the general area of the battery, in the upper left part under the hood of the vehicle. There was a loose wire or terminal, probably for speakers or amplifiers that was not properly connected to the battery and/or should have been removed. There was also a mass of wires under the seat indicating that at some point the system had been installed in the truck, however the system was not present when Ma-sanz purchased the truck. He further opined that this condition (the wire or terminal) was a defect creating a fire hazard that should have been corrected prior to selling the vehicle.
Walter Cannon, Service Manager of Toyota of New Orleans, was qualified as an expert in auto mechanics. He stated that if oil was not properly installed during an oil change procedure, it could leak and be a source of fire. He did not inspect the vehicle and he is not an expert in the cause and origins of fire.
Troy Duhon, the owner and managing member of Premier Nissan, testified that he does not allow his employees to sell their private vehicles from his |7dealership. He was not aware that Mr. Mounis was offering to sell his pickup truck at the dealership, and he would not have allowed it had he known. He knew Amanda McKay as Mounis’ wife, and he did not authorize Mounis to sell her truck, nor did he allow Zuniga to assist in the sale. Premier Nissan did not receive any benefits from this sale. He also stated that he could not rescind the sale since it was not Premier Nissan’s sale. His bill of sale and notary acts are done at the dealership, and then Casey & Casey secures the new title and the plates.
At the conclusion of trial, the court found Premier Nissan, Zuniga and Mounis liable in solido for the purchase price of the car and for the expert fees and costs. In so doing the court found that the sale was made at Premier, by people employed at Premier, and that the plaintiff assumed that he was buying the ear from Premier. The court further found no bad faith on the part of Premier, and so it assessed general damages of $2,000.00 and loss of personal property of $6,401.00 against Mounis and Zuniga in solido. Finally, the court rendered judgment for indemnification in favor of Premier Nissan and against Mr. Mounis.
DISCUSSION
As previously mentioned, Premier Nissan, Carlos Zuniga, and plaintiff Masanz each appealed the judgment of the trial court.
Premier Nissan alleges that it cannot be held in redhibition as a non-seller, that the doctrine of apparent authority is not appli *174 cable to a redhibition action and that there was no evidence of negligence on its part to support the judgment.
Frank Masanz alleges that the trial court erred in failing to find Premier Nissan liable in concert with Zuniga and Mounis and in failing to assess bad faith attorney fees and penalties.
Carlos Zuniga did not present any issues for this Court to review and further filed a motion to dismiss the appeal in this Court. | ^Appeal of Premier Nissan
Premier Nissan first asserts that a non-seller cannot be held liable in redhibition.
The law is clear that La. C.C. Articles 2520-2540 provide that the action in red-hibition may be brought only by a buyer against a seller of property. That is consistent with the understanding that redhibition is not so much directed toward who is at fault in causing the vice to exist but is directed toward warranty of vendor against vices in thing sold. The redhibition claim is between sellers and purchasers. A redhibition action cannot be maintained absent such relationship.
Connell v. Davis, 06-9 (La.App. 5 Cir. 10/17/06), 940 So.2d 195, 205, writ denied 06-2810 (La.1/26/07), 948 So.2d 175, 178.
Because no legal ownership is attributable to Premier Nissan, it cannot be considered a seller for purposes of redhibition. Duplechin v. Adams, 95-0480 (La.App. 1 Cir. 11/9/95), 665 So.2d 80, 84, writ denied 95-2918 (La.2/2/96), 666 So.2d 1104.
Premier Nissan next argues that the doctrine of apparent authority is not applicable in this case.
LSA-C.C. art. 3021 provides that “One who causes a third person to believe that another person is his mandatary is bound to the third person who in good faith contracts with the putative mandatary.” However, this article is inapplicable because the mandataries herein did not sell anything belonging to the principal.
Thirdly, Premier Nissan argues that plaintiff cannot recover under any theory of negligence.
LSA-C.C. art. 2315(A) provides that “Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” The Louisiana Supreme Court set forth the factors to be considered in evaluating a claim under LSA-C.C. art. 2315 as follows:
|flThe standard negligence analysis we employ in determining whether to impose liability under La. Civ.Code art. 2315 is the duty/risk analysis, which consists of the following four-prong inquiry: (1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred? (2) Did the defendant(s) owe a duty to the plaintiff? (3) Was the duty breached? (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached? Under a duty/risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. As such, in order for liability to attach under a duty/risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection *175 element); and, (5) actual damages (the damages element). (Citations omitted).
Rando v. Anco Insulations Inc., 08-1163 (La.5/22/09), 16 So.3d 1065, 1086-7.
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Whether a duty is owed is a question of law. Elaborating further, we stated:
Whether a duty is owed is a question of law. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty. (Citations omitted).
Lemann v. Essen Lane Daiquiris, Inc., 05-1095 (La.3/10/06), 923 So.2d 627, 632-633.
In this case, the threshold question becomes whether there was a duty owed by Premier Nissan to plaintiff that was breached. We find that there was not.
Mr. Mounis was not present at trial; however testimony established that he was aware that the car belonged to his wife, and not Premier Nissan. Zuniga testified that he was aware that the car did not belong to Premier Nissan, and he believed it belonged to Mounis. Accordingly, they did not negligently sell a car they believed was owned by Premier Nissan, but intentionally sold a car that they knew was not owned by Premier Nissan. The duty that Premier Nissan owed to | inplaintiff did not encompass the risk that one of its employees would sell a car that Nissan did not own.
Next, we also find that Premier Nissan was not liable to the plaintiff under the theory of respondeat superior, or an employer’s vicarious liability for the acts of its employees. In Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, 996, the Louisiana Supreme Court noted that
... in an analysis of vicarious liability for an employee’s tortious actions, the court must consider more than simply whether the employee was in the course and scope of employment at the time of the incident. An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer’s objective.
In determining whether an employee is acting in furtherance of his employer’s objective, courts consider the following
A finding of scope of employment hinges on the predominant motive of the tortfeasing employee, whether the purpose of serving the employer’s business actuated the employee to any appreciable extent. Generally speaking, an employee’s conduct is within the course and scope of his employment if the conduct is of the kind he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. (Citations omitted).
Garcia v. Furnace and Tube Service, Inc., 40,517 (La.App. 2 Cir. 1/27/06), 921 So.2d 205, 211.
In this case, it is clear that the employees were not acting in furtherance of their employer’s objectives by selling a car that was not owned by the employer and from which the employer received no benefit. Accordingly, Premier Nissan is not vicariously liable for the actions of Zuniga and Mounis.
*176 Considering the foregoing, we find that the trial court erred in holding Premier Nissan liable along with Mounis and Zuni-ga. We further find no liability | non the part of Premier Nissan and we render judgment in its favor, dismissing plaintiffs suit against it.
Appeal of plaintiff, Masanz
Frank Masanz also appeals, alleging first that the trial court erred in failing to find that Premier Nissan acted in concert with Zuniga and Mounis, and second that the trial court erred in failing to award damages for defendant’s bad faith pursuant to LSA-C.C. art. 2545, which provides that a seller who knows the vice of the thing which he sells and omits to declare it is answerable to the buyer in damages.
Initially, because we find no theory supporting recovery against Premier Nissan, and no evidence to indicate that it was aware of the actions of Zuniga and Mounis, the trial court did not err in failing to find that Premier Nissan acted in concert with Zuniga and Mounis.
Masanz alleges that the trial court erred in failing to find bad faith on the parts of Zuniga and Mounis. In addition to restitution of the price and repayment of expenses, including reasonable attorney’s fees, the bad faith seller is also answerable for other damages, and under the proper circumstances, those damages can include nonpecuniary damages for mental anguish, aggravation, and inconvenience. Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127 (La.App. 1 Cir. Jun. 29, 1992);
In this case, Masanz alleges that the fact that Zuniga provided a false Car Fax along with the fact that Mounis made a profit on selling the car supports a finding that Zu-niga and Mounis were in bad faith. However, every false representation does not fall into the category of fraud. Cotton States Chemical Co., Inc. v. Larrison Enterprises, Inc., 342 So.2d 1212 (La.App. 2 Cir.1977).
112Masanz presented no evidence to show that either Mounis or Zuniga knew of the defect prior to selling the truck. Accordingly, we cannot say that the trial court erred in failing to find that they knew of the defect prior to the sale and in failing to award damages for bad faith.
Appeal of Zuniga
Zuniga has filed a motion to dismiss his appeal in this Court, which we referred to the merits of this appeal. Zuniga did not file a brief, and therefore we need not address any merits of his appeal. To the extent that his motion to dismiss is not considered moot, we grant that motion and dismiss his appeal.
CONCLUSION
For the above discussed reasons, the trial court’s judgment finding Premier Nissan liable is reversed and plaintiffs suit against Premier Nissan is dismissed. In all other respects, the trial court’s judgment is affirmed. The motion to dismiss appeal filed by Carlos Zuniga is granted. Costs are assessed against plaintiff.

APPEAL OF CARLOS ZUNIGA DISMISSED; AFFIRMED IN PART; REVERSED IN PART; RENDERED

JOHNSON, J., dissents with reasons.