ON REHEARING
Before BROWN, WILLIAMS, MOORE, LOLLEY and SEXTON (Pro Tempore), JJ.
LOLLEY, J.
hThe facts and procedural history of this case have been thoroughly set forth in the initial opinion and dissent. We granted rehearing to address the issue of whether David McFarlin owed a personal duty to Amy Bloxom, the mother (and plaintiff in this matter) of the murdered child, Justin Bloxom, to protect him from the risk of sexual assault and murder at the hands of Brian Douglas Horn. McFarlin, president of Blue Phoenix Trading Company d/b/a Action Taxi, personally hired Horn to be a taxi cab driver, despite knowing that Horn was a convicted and registered sex offender. In the original majority opinion, it was decided that McFarlin, as a corporate officer, did not have a personal duty and summary judgment on the issue was correct. We disagree, and now vacate this *390 court’s original opinion, reverse the trial court’s grant of summary judgment, and remand this matter for further proceedings.
Discussion
Not only does the original opinion lay out the facts and procedural history of this case, but it also succinctly sets forth the applicable statutory and jurisprudential precepts to be applied. We agree with the assertion in the original opinion that “[A corporate officer] owes a duty of reasonable care which does not extend to all torts that all employees might commit.” More specifically, all parties agree with the pronouncement of law in Canter v. Koehring Co., 283 So.2d 716, 721 (La.1973) that, “[The corporate officer] must have a personal duty towards the injured plaintiff, breach of |2which specifically has caused the plaintiffs damages.” Thus, the issue addressed in this case is whether a genuine issue of fact exists as to whether McFarlin, a corporate officer, had a personal duty to Justin and his mother, Amy Bloxom.
We also note certain assertions observed in the original opinion, earlier made in Carter v. State, Dept. of Transp. and Development, 45,506 (La.App. 2nd Cir.08/11/10), 46 So.3d 787, 792:
Due to the beneficial role of the corporate concept, the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances. Louisiana courts are very hesitant to hold a shareholder, officer or director personally liable for corporate obligations.
* * * * Regardless of the basis for piercing the corporate veil, the situation must be viewed with regard to the totality of circumstances in each case. Whether imposition of individual liability is justified under particular circumstances is primarily a factual finding to be made by the trial court. (Citations omitted; emphasis added).
This case presents the perfect storm envisioned by the applicable jurisprudence — “exceptional circumstances” when viewed in their totality come together to potentially expose a corporate officer to personal liability. When we regard the “totality of circumstances” in this case, we are called to consider: this corporate officer and his admitted knowledge; this employee and his known propensities; this job which the employee was chosen to fill; and, this horrific tort he committed directly related to McFarlin’s specific knowledge. Such consideration leads to a conclusion that a genuine issue of material fact clearly exists in this particular case as to McFarlin’s personal | aduty for two distinct reasons: (1) McFarlin’s admitted knowledge of Horn’s status as a registered sex offender; and, (2) the unique job McFarlin hired Horn to perform.[1]
The first fact bearing heavily on the issue of McFarlin’s duty is his knowledge. McFarlin knew that Horn was a convicted and registered sex-offender, having been convicted for felony sexual assault in Missouri, and before that in Louisiana for indecent behavior with a juvenile. Louisiana R.S. 15:540(A) addresses the purpose of Louisiana’s sex offender registration law, providing that, “The legislature finds *391 that sex offenders, sexually violent predators, and child predators often pose a high risk of engaging in sex offenses, and crimes against victims who are minors even after being released from incarceration or commitment and that protection of the public from sex offenders, sexually violent predators, and child predators is of paramount governmental interest.” Registration of sex offenders is a public safety concern, and knowledge of someone’s status as a sex offender should not be taken lightly. Here, Horn’s status as a sex offender was evident on his driver’s license. Notably, with a quick internet search on the sex offender website, McFarlin could have easily determined why Horn was required to register as a sex offender. The record does not reflect that McFarlin made any effort to make such an inquiry. From the facts discovered thus far, it appears that McFarlin chose to hire Horn, despite his ^knowledge of Horn’s proclivities. McFarlin lightly accepted the fact, personally chose to disregard the importance of the information, and gave Horn the protective shield of the taxi cab to pursue his victim.
The second consideration instrumental in determining whether McFarlin had a personal duty in this case centers on the particular and unique job for which Horn was hired — a taxi cab driver. In our society, taxi cab drivers enjoy a unique position. Historically, society has been accustomed to the idea that the general public can safely employ the use of a common carrier. Whereas most people, certainly children, would not get into a random vehicle with a complete stranger, custom tells us that a taxi is safe and dependable. This despite the fact that the passenger is at the complete and utter mercy of a perfect stranger, who has full dominion over the passenger — a virtual sitting duck. The taxi cab passenger is completely vulnerable. Understandably then, a common carrier is held not simply to a reasonable degree of care, but to the highest degree of care, and the commission of any act of negligence or the omission of any act of care or caution, no matter how slight in degree, subjects such carrier to liability. Cox v. Toye Bros. Yellow Cab Co., 144 So.2d 448 (La.App. 4th Cir.1962).
But simply because a common carrier must act with the highest degree of care does not necessarily inflict personal liability onto the corporate officer of the company operating the common carrier. Guided by the premise that common carriers owe their passengers the highest degree of care, the officer of such a company has an obvious duty to the public to properly vet job applicants prior to their employment. Who has the control to ensure that the taxi cab driver is not dangerous? In this case, one person |shad control of that decision: McFarlin. One person made the decision that Horn, a known sex offender, could be entrusted with the public’s safety, the highest degree of care, even though his legal status reflected he could not be so trusted. McFarlin personally made the decision that despite Horn’s status as a sex offender, he was capable of driving a taxi cab and deserved the public’s trust. McFarlin, knowing that Horn was a dangerous person, still made the choice to set him loose among the public under the guise of the secure taxi cab. McFarlin’s gross misjudgment should not allow him the cover of the corporate shield that is allowed most corporate officers who make careless and unknowing mistakes.
In addition to the trust element imposed upon a taxi cab driver by their mere position as such, the nature of the employment is also important because the unique mobility of the position. Horn had ongoing and constant contact with the general public, with no supervision. He was a roving, *392 rolling risk at all times. With full knowledge that Horn was a convicted sex offender, McFarlin personally placed Horn in an unsupervised position where he had direct access to and contact with the public at large and continuing opportunity to prey upon them.
Moreover, considering McFarlin’s knowledge of Horn’s dangerous nature, his apparent disregard of Horn’s status, and the nature of the job Horn was hired to performed, it was certainly reasonably foreseeable that Horn was set up to commit his next crime. The original opinion noted that:
A risk may be outside the scope of a duty when the circumstances of the particular injury to the plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that -risk and the legal duty. Rando v. Anco Insulations, Inc., 2008-1163 (La.05/22/09), 16 So.3d 1065. Rules of conduct are designed to protect some persons under some circumstances from some risks. Wex Malone, Ruminations on Cause-in-Fact, 9 Stan. L.Rev. 60 (1956).
At oral argument, McFarlin’s counsel argued that the circumstances of the particular injury to Justin could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and McFarlin’s duty. We strongly disagree. In fact, placing a known sex offender in a taxi cab, with unfettered access and control over his passengers who assume they are in a position of safety is akin to placing the proverbial fox in the hen house. The purpose behind the sex offender registration law is to protect the public from repeat offenses. Placing a known sex offender in an unsupervised position with total control over the unsuspecting public lulled into complacency by the taxi cab cover leads to reasonably anticipated consequences — a repeat sex offense.
Furthermore, imposing personal liability on McFarlin, a corporate officer, for the torts of his employee will not frustrate the benefit of business organizations as maintained by the original majority opinion. The legal precepts cited in the original opinion bear repeating here:
Personal liability of a corporate officer is premised on “malfeasance, misfeasance, or nonfeasance” resulting from failure to act upon actual knowledge of the risk to others. Canter v. Koehring Co., 283 So.2d at 721. When an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party, he has a duty to exercise reasonable care in the selection of that employee. Cote v. City of Shreveport, 46,571 (La.App.2d Cir.09/21/11), 73 So.3d 435; Kelley v. Dyson, 2008-1202 (La.App. 5th Cir.03/24/09), 10 So.3d 283; Taylor v. Shoney’s Inc., 1998-810, 15 IER Cases 285 (La.App. 5th Cir.01/26/99), 726 So.2d 519, writ denied, 1999-0540 (La.04/9/99), 740 So.2d 635.
Prior courts have left open the door for “piercing the corporate veil” and 17fmding personal liability of a corporate officer. It is not our intent to open the floodgates of litigation against corporate officers; however, if this case is not the one for which a corporate officer may have personal liability, it is difficult to perceive any fact scenario where a corporate officer ever will. McFarlin had precise knowledge of Horn’s history. This employee had the “unique opportunity” to commit the precise sort of tort McFarlin was informed Horn might commit. This horrific case is intensely fact specific. In this particular case, for this particular employee, who was hired by McFarlin for the particular purpose of driving a cab, we believe there exists a *393 genuine issue of whether McFarlin had a personal duty to Justin and, now, his mother. In fact, this case is the exception, not the rule, for which prior jurisprudence has allowed a crack, even a sliver, to pierce the corporate veil and find the corporate officer personally hable. We are willing to slip through that crack in this particular ease and give the trial court the opportunity to open that door at trial. McFarlin’s overt degree of negligence should not allow him to stand in the shadows of the corporate veil to avoid personal liability for the murder of Justin Bloxom. So considering, the trial court’s grant of summary judgment on this issue was in error.
| ^Conclusion
For the forgoing reasons, the summary judgment in favor of David McFarlin is reversed, and he is to bear all costs of this appeal. This matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
MOORE, J., dissents and assigns written reasons.
SEXTON, J. (Pro Tempore), dissents for the reasons assigned by MOORE, J.

. Although having no bearing on our decision herein, we note that in 2010 the Louisiana Legislature made it "unlawful for any person who is required to maintain registration pursuant to Chapter 3-B of Title 15 to operate any bus, taxicab, or limousine for hire.” The notes of the statute provide that, "This Act shall be known as the 'Justin M. Bloxom Act’ in honor of Justin M. Bloxom, a resident of Stonewall, Louisiana, who was murdered on March 30, 2010.” See La. R.S. 15:553.