BROWN, Chief Judge.
|, While at work, plaintiff, William Wesley Carnes, was physically beaten by a coworker. Plaintiff filed a petition for damages against the co-worker, Caleb Wilson, and their employer, Select Energy Services, L.L.C., d/b/a Pen Rob Well Services (“Select Energy”). Select Energy filed a motion for summary judgment claiming that workers’ compensation was the exclusive remedy for Carnes’s injuries; Carnes filed a cross-motion for summary judgment on June 25, 2012. The trial court rendered judgment denying Select Energy’s motion for summary judgment and granting Carnes’s cross-motion for summary judgment on the issue of vicarious liability.[1] Select Energy appeals. For the following reasons we affirm.

Law

Motion for Summary Judgment

Appellate courts review summary judgments de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Cote v. City of Shreveport, 46,571 (La.App.2d Cir.09/21/11), 73 So.3d 435. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). The procedure is favored under Louisiana law and shall be construed to accomplish these ends. Id. Summary judgment shall be rendered “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
12Under the current summary judgment standard, if the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. art. 966(C); Berzas v. Oxy USA, Inc., 29,835 (La.App.2d Cir.09/24/97), 699 So.2d 1149.

Tort Immunity

The Louisiana Workers’ Compensation Act provides for the payment of compensation if an employee sustains personal injury as the result of an accident arising out and in the course of employment. La. R.S. 23:1031. Except for intentional acts, the rights and remedies granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation, shall be exclusive. La. R.S. 23:1032. Thus, an employer has tort immunity, except an employee may recover from his employer under general tort law for an intentional act. Benoit v. Capitol Manufacturing Company, 617 So.2d 477 (La.1993).

*1277
Vicarious Liability

An employer can be vicariously liable for its own intentional acts and the intentional acts of its employees. Benoit, supra. The employer’s liability, however, extends only to those acts which are within the course and scope of the tortfeasor’s employment, as compared with conduct instituted by purely personal considerations entirely extraneous to the 13employer’s interest. Wearrien v. Viverette, 35,446 (La.App.2d Cir.12/05/01), 803 So.2d 297.
The test for employer liability has been established in LeBrane v. Lewis, 292 So.2d 216 (La.1974). LeBrane held that an employer is responsible for an employee’s intentional tort when the conduct is so closely connected in time, place and causation to the employment duties that it constitutes a risk of harm attributable to the employer’s business. In LeBrane, a supervisor terminated an employee’s job and walked him outside the building where a fight began. The supervisor then knifed the former employee. The fight was found to be “employment-rooted.” Id. at 218. The supervisor’s act was so closely connected to his employment duties that it was a risk of harm attributable to the employer’s business. Thus, the tort was within the scope of the supervisor’s employment, making the employer liable in tort to the discharged employee. LeBrane, 292 So.2d at 219; Benoit, 617 So.2d at 479.
In Benoit, supra at 479, the court observed that “[T]he broom stick battery on Benoit was clearly ‘employment-rooted.’ The issue was temperature in the work place (a dispute over whether the rear door should be opened or closed). While Bennett’s striking Benoit did not benefit the employer, neither did Lewis’ cutting LeBrane.”

Facts and Procedural Background

Both Carnes and Wilson were employees of Select Energy at the time of the altercation. Prior to the fight, the two men had worked on a crew together for approximately one month. Carnes was the welder and Wilson 14was the welder’s helper. During their time working together, Carnes complained about Wilson’s conduct while on the job numerous times to his supervisors. Specifically, Carnes complained of Wilson’s hot-temperedness, repeated failures to show up for work, and his suspected drug use during the work day. All of the complaints related to workplace safety and/or involved acts specifically prohibited by the company’s employee handbook.
Following multiple complaints, Carnes demanded Wilson’s termination or transfer. Rhett Schrode, a supervisor, removed Wilson from Carnes’s crew and restricted Wilson from leaving the work site for lunch. Approximately three weeks later, on July 21, 2010, Wilson was reassigned to work on Carnes’s crew. During the work day, Carnes and Wilson had limited interaction other than “simple work communication.” At 4:45 p.m., as the work crew was finishing up for the day, Carnes was smoking a cigarette when he was blindsided by Wilson. Carnes was knocked to the ground, temporarily lost consciousness, and awoke to find Wilson on top of him hitting him repeatedly. As a result of the unprovoked attack, Carnes suffered a broken jaw and permanent nerve damage to the right side of his face. Both Carnes and Wilson were subsequently terminated by Select Energy due to the company’s anti-fighting policy. As a result of the attack, Carnes received workers’ compensation benefits and Wilson pled guilty to second degree battery.
In his suit, Carnes argued that Wilson was liable for damages and that Select Energy should be held vicariously liable for Wilson’s intentional act. | r,Carnes also argued that Select Energy was negligent *1278 in its retention of Wilson. Select Energy answered, denying any fault and/or negligence in bringing about the July 21, 2010, altercation. Select Energy filed a motion for summary judgment and Carnes filed a cross-motion for summary judgment. The trial court denied Select Energy’s motion for summary judgment and granted Carnes’s cross-motion for summary judgment on the issue of vicarious liability.[2]

Analysis

The determination of an employer’s vicarious liability revolves around the particular facts of the case. It is uncontested that the attack occurred on Select Energy’s premises and during work hours; therefore, it must be determined whether the attack was either employment-rooted or reasonably incidental to Wilson’s employment duties.
A review of the record shows that Carnes made numerous complaints to his and Wilson’s supervisors informing them of issues that could compromise the work site safety of Carnes and his crew. In response, Select Energy prohibited Wilson from leaving the work site for lunch and transferred him from Carnes’s crew. Nevertheless, three weeks later they put Wilson back on Carnes’s crew and Wilson attacked Carnes.
The facts in Garcia v. Furnace and Tube Service, Inc., 40,517 (La.App.2d Cir.01/27/06), 921 So.2d 205, are similar to the factual scenario in the present case. In Garcia, the employer contended that the trial court erred in finding that it was vicariously liable for the damages inflicted upon | (¡Garcia by a coworker, Broussard. Both were welders. The employer acknowledged that Broussard committed an intentional tort on Garcia and that the initial verbal argument between the two men stemmed from Broussard’s comments made to the quality control inspector regarding Garcia’s workmanship. The two employees separated after the initial verbal confrontation and Garcia walked to the foreman’s truck. When Broussard went over to the truck, the fight ensued. This court determined that there was no evidence to suggest personal motivation on the part of the tortfeasor and that, in fact, “it could be seen as an issue which would promote the interest of the employer if indeed Garcia’s work was found to be substandard.” Garcia, 921 So.2d at 211.
Select Energy tries to distinguish Garcia from the present situation by arguing that in Garcia, the tortfeasor was the employee who questioned the quality of Garcia’s work, as opposed to the present matter wherein Carnes was the one reporting questionable work behavior. While we note the distinction, we find that it does not alter the underlying cause of the altercation, which is that it was employment-rooted. Carnes testified that he and Wilson did not know each other outside of work and that on the day of the attack he and Wilson talked only about work. The obvious reason for the physical attack on Carnes was that it was in direct response to the complaints Carnes had made regarding Wilson’s job performance and workplace safety. We find it highly improbable that Wilson was unaware of the complaints since he had been prohibited from leaving the work site for lunch and had been transferred from Carnes’s crew.
|7In addition to concluding that the altercation was employment related, we also find that Select Energy might have prevented the attack had it not put Wilson back on Carnes’s crew. Carnes’s supervisors were aware of the issues Carnes had with Wilson, as well as Wilson’s propensity towards violence as Carnes testified that supervisors were aware of a previous shoving altercation initiated by Wilson against *1279 another employee. Nonetheless, they assigned Wilson to assist Carnes on the date in question. While, as Select Energy argues, Wilson attacking Carnes does not further its business interests, it is illogical to think that workplace violence ever advances a corporate interest. Apparently, Select Energy’s business interests were advanced on that particular day by having Wilson on Carnes’s work crew. Coupling that with the fact that Wilson had been reported to have a hot temper and substance abuse problems, it was reasonably foreseeable that an attack could occur.
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed when the masters or employers might have prevented the act which caused the damage, and have not done it. La. C.C. art. 2320. In this case, Select Energy assigned Wilson to Carnes’s crew with full knowledge of the tension between the two employees. Had it not done so, the altercation may have been prevented.
Regardless, based upon our de novo review, we find that the trial court was correct in its determination that the altercation resulted from a dispute over employment-related issues and, further, that no genuine issue |sof material fact exists. Accordingly, the trial court’s granting of plaintiffs partial motion for summary judgment is affirmed.

Conclusion

For the foregoing reasons, the judgment of the trial court denying the motion for summary judgment of defendant, Select Energy Services, L.L.C., d/b/a Pen Rob Well Services, is affirmed. Furthermore, the judgment of the trial court granting the partial motion for summary judgment in favor of plaintiff, William Wesley Carnes, against Select Energy is also affirmed. Costs of this appeal are assessed against Select Energy.

. We note that Wilson failed to answer the petition and, as such, the trial court deemed plaintiffs motion for summary judgment against him premature.

. Plaintiff did not address the issue of negligent retention in his brief.