BROWN, Chief Judge.
| ¶ Agnes Wylonda Carroll died testate on January 3, 2008. She was survived by three adult children. Her testament des *506 ignated her daughter, Ethyl Joyce Cruse Hornsby, as executrix and as the universal legatee. The testament was probated on August 1, 2008. Plaintiffs, Donna Cruse Cagle and Thomas B. Cruse, Jr., who were decedent’s other two children, petitioned to annul and declare the testament to be invalid. As relates to this appeal, plaintiffs filed a motion for partial summary judgment declaring them to be forced heirs of their mother. The trial court denied plaintiffs’ motion for partial summary judgment. Specifically, the trial court determined that genuine issues of material fact existed as to whether either plaintiff was permanently incapable of caring for his/her person or administrating his/her estate at the time of decedent’s death. The trial court certified this judgment as a final judgment for appeal. For the reasons stated herein, we now affirm.

Facts and Procedural Background

In their petition, filed on November 20, 2008, plaintiffs/appellants, Donna Cagle and Thomas Cruse, Jr., sought to nullify the Agnes Carroll will and certain real estate transactions based on the following grounds: 1) Agnes Carroll was of unsound mind; 2) Agnes Carroll was acting under fraud, duress or mistake; and/or 3) Agnes Carroll lacked testamentary capacity.
In an amended petition, plaintiffs subsequently raised, among other claims, the issue that is central to this appeal, forced heirship. On September 19, 2012, plaintiffs filed the instant motion for partial summary | ¡judgment asking the trial court to recognize both of them as forced heirs of Agnes Carroll. Each claimed that they were permanently physically disabled. The trial court denied plaintiffs’ motion, finding that genuine issues of material fact exist regarding their claims of forced heir-ship.

Discussion

Article 12, § 5 of the Louisiana Constitution abolished forced heirship effective January 1, 1996, except that it provides in part that:
(B) The legislature shall provide for the classification of descendants, of the first degree, twenty-three years of age or younger as forced heirs. The legislature may also classify as forced heirs descendants of any age who, because of mental incapacity or physical infirmity, are incapable of taking care of their persons or administering their estates. The amount of the forced portion reserved to heirs and the grounds for disinherison shall also be provided by law. Trusts may be authorized by law and the forced portion may be placed in trust.
The legislature enacted La. C.C. art. 1493, which provides in part that:
(A) Forced heirs are descendants of the first degree who, at the time of the death of the decedent, are twenty-three years of age or younger or descendants of the first degree of any age who, because of mental incapacity or physical infirmity, are permanently incapable of taking care of their persons or administering their estates at the time of the death of the decedent.
[[Image here]]
(E) For purposes of this Article “permanently incapable of taking care of their persons or administering their estates at the time of the death of the decedent” shall include descendants who, at the time of death of the decedent, have, according to medical documentation, an inherited, incurable disease or condition that may render them incapable of caring for their persons or administering their estates in the future.
Article 1493(A) clarifies the law in several respects and should help |..¡reduce un *507 warranted or inappropriate claims. For one thing, art. 1493 specifies that the time at which the incapacity or infirmity is determined to be relevant is at the donor’s death, which was always intended but may not have been fully clear in the earlier legislation. More importantly, the legislature added the word “permanently” before the word “incapable” for the express purpose of emphasizing that a temporary incapacity or infirmity, even if severe, should not apply. Although the jurisprudence on limited interdiction may be helpful, the new rule expressed in this article is intentionally different and more restrictive than the standard for interdiction because of the use of the word “permanently” to describe the nature of the incapacity or infirmity. La. C.C. art. 1493, Revision Comment (c).[1]
Appellate courts review summary judgments de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Cote v. City of Shreveport, 46,571 (La.App.2d Cir.09/21/11), 73 So.3d 435. Summary judgment shall be rendered “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
|4For plaintiffs to qualify as forced heirs, they must show that at the time of their mother’s death they were permanently incapable of taking care of their persons or administering their estates due to either mental incapacity or physical infirmity. Permanent incapacity “shall include descendants who, at the time of death of the decedent, have, according to medical documentation, an inherited, incurable disease or condition that may render them incapable of caring for their persons or administering their estates in the future.” La. C.C. art. 1493(E).
In support of their motion for summary judgment plaintiffs each submitted a personal affidavit, an affidavit of their respective treating physicians, and Social Security Administration (“SSA”) documents showing that prior to their mother’s death they had been declared disabled. It is on the latter two types of evidence that plaintiffs primarily rely in support of their motion for summary judgment.
Donna Cagle was born on January 11, 1947. She was diagnosed with a tumor known as a vestibular schwannoma or Acoustic Neuroma, which was surgically removed on June 6, 2005, due to the chronic imbalance it was causing her. Prior to her mother’s death, Ms. Cagle was declared disabled by both her private insurer and the SSA, a classification that remains today.
Thomas Cruse, Jr., was born on March 13, 1943. He was diagnosed with prostate cancer in 2003, which returned after treatment and a temporary remission. Prior to his mother’s death, Mr. Cruse was also *508 declared disabled by the SSA. The SSA deémed Mr. Cruse’s disability to 1 shave “onset” by at least March 4, 2004, and he remains classified as disabled. In addition, Mr. Cruse also suffers from an irregular heartbeat and postherpetic neuralgia.
The SSA document submitted by Donna Cagle was a determination and finding of disability by the SSA. Tommy Cruse submitted a SSA document showing current SSA benefits. Donna Cagle and Tommy Cruse also submitted affidavits from their treating physicians, Drs. Brian McKinnon and Robert Raulerson, respectively.
In opposition to the summary judgment motion, defendant submitted exhibits, including an affidavit from a private investigator that identified numerous physical activities that plaintiffs have performed. The exhibits showed that Donna Cagle, who lived in Georgia, had driven back and forth from Georgia to Louisiana and to New Jersey where she “pet” sat for her son. Meanwhile, the exhibits showed that Tommy Cruse drove his truck, refueled it, unloaded groceries and dry cleaning, made numerous visits to businesses, and even went deer hunting.
Dr. McKinnon’s affidavit, dated September 13, 2012, states, in pertinent part:
4. I have treated Donna Cagle as a patient for approximately three (3) years.
8. Mrs. Cagle underwent resection of a right vestibular schwannoma via middle fossa approach on 6/7/05 at the House Ear Clinic.
9. She executed this procedure on account' of her chronic imbalance ■ caused by her condition.
10. My record show Mrs. Cagle has been declared physically ^disabled due to the above conditions by her disability insurance carrier, as well as, the Social Security Administration under its guidelines.
11. Mrs. Cagle’s symptoms have remained persistent, and in view- of the apparent recurrence of her acoustic neu-roma on the right, she will likely need further intervention preventing Mrs. Ca-gle from effectively administering her affairs and/or taking care of her estate.
12. I anticipate her physical infirmity will remain unchanged, if not digress, in view of my current findings.
Considering that there is no mention of whether Ms. Cagle’s physical infirmity is an inherited, incurable disease, we are left to determine whether she suffered a physical infirmity that rendered her “permanently incapable” of taking care of her person or estate at the time of her mother’s death. Based upon a reading of the affidavit, ,Dr. McKinnon began treating Ms. Cagle after her mother’s death; he was not the physician in 2005 when she underwent resection; and he fails to state at what point in time the apparent recurrence of her acoustic neuroma occurred. The affidavit merely states that “she will likely need further intervention preventing [her] from effectively administering her affairs and/or taking care of her estate.” This appears to show that Ms. Cagle suffers from a physical infirmity that may render her incapable of caring for her person or estate at some point in the future, not that she was permanently incapable at the time of her mother’s death. As noted above, the opposition affidavits show that she drove to Louisiana from Georgia on multiple occasions. Specifically, they showed that she drove to Louisiana after her mother’s death to assist in making arrangements for her mother’s funeral, she ran errands and went shopping without assistance. Considering the aforementioned, the trial court correctly .[¡¿determined that genuine issues of material fact exist as to whether Ms. Cagle was *509 permanently incapable of caring for her person or estate at the time of her mother’s death and/or whether the acoustic neuroma is an inherited, incurable disease.
Likewise, the affidavit of Dr. Raulerson, Mr. Cruse’s treating physician, fails to state whether the prostate cancer and other ailments that Mr. Cruse suffers from are inherited, incurable diseases or conditions. Furthermore, the affidavit of Mr. Cruse’s treating physician fails to establish that on the date of his mother’s death he was “permanently incapable.” In fact, Dr. Raulerson’s affidavit states that Mr. Cruse’s prostate cancer is “a disease which may render Mr. Cruse permanently incapable of taking care of his person or administering his estate at some point in the future.” Again, the opposition showed that his activities put at issue whether he was permanently incapable caring for himself and administering his estate. As the trial court correctly found, this opinion, coupled with the opposition’s affidavits, does not support a finding that he was “incapable” on January 3, 2008, the date of his mother’s death.
Plaintiffs submit in their appellate brief that the SSA classification “is, at the very least, a factor to consider in determining whether a descendant qualifies as a forced heir under Louisiana law.” We agree, it is a factor to consider. This is a motion for summary judgment, not a trial. A factor, without more, fails to meet plaintiffs’ burden of showing that there is no genuine issue as to material facts. Just because a person qualifies for disability benefits does not mean that he or she is permanently incapable of | staking care of his or her person or estate. In Ms. Cagle’s case, we note that the adjudication of disability by the SSA concludes by stating that “Medical improvement is expected with appropriate treatment. Consequently, a continuing disability review is recommended in 18 months.”
Further, considering defendant’s offerings in opposition to plaintiffs’ motion for summary judgment, it is clear that there were genuine issues of material fact regarding either plaintiffs status as a forced heir. Plaintiffs contend that since defendants failed to present an affidavit from a countervailing medical expert, their opposition to plaintiffs’ motion for summary judgment is insufficient and the trial court erred in not decreeing each a forced heir. Louisiana law does not entitle a party to summary judgment solely on the grounds that the moving party offered medical testimony and the opposing party did not. The trial court must still examine the medical testimony to determine if it eliminates any genuine issue of material fact. Here, the trial court analyzed the affidavits of plaintiffs’ treating physicians, as well as the exhibits offered in opposition, and correctly determined that there were genuine issues of material fact as to whether either plaintiff suffered from a physical incapacity at the time of their mother’s death which rendered them permanently incapable of caring for their persons or estates.

Conclusion

Based on the foregoing, the trial court’s denial of plaintiffs’ motion for partial summary judgment is affirmed. Costs of this appeal are assessed to plaintiffs.

. The adverb "permanently” in Civil Code article 1493 modifies incapable and refers to the duration, not extent of the incapacity, even though some of the original language of comment (c) drafted after legislative passage suggested to the contrary. In 1998 the legislature by resolution directed the Law Institute to change the comment because the comment "incorrectly characterizes permanently incapable children by terms not included within the article as enacted by the legislature, such as ‘severely disabled’ and 'seriously handicapped’ and thereby purports to limit the category of incapable children as defined by the legislature.” Katherine Spaht, The Remnant of Forced Heirship: The Interrelationship of Undue Influence, What’s Become of Disinherison, and the Unfinished Business of the Stepparent Usufruct, 60 La L.R. 637, 643 (2000).